1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

**James Lee Hess,**
Petitioner
-vs-
**Dora B. Schriro, et al.,**
Respondent(s)

CV-06-1639-PHX-PGR (JI)

**REPORT & RECOMMENDATION**
**On Petition for Writ of Habeas Corpus**
**Pursuant to 28 U.S.C. § 2254**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Tucson, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 28, 2006 (#1), and a supplemental memorandum on August 23, 2006 (#9). On October 13, 2006, Respondents filed their Answer (#12). Petitioner filed a Reply on October 5, 2007 (#30). Subsequently, Respondents filed a first Supplemental Answer on March 12, 2008 (#34) and a Second Supplemental Answer on September 9, 2008 (#57). Petitioner has filed a first Supplemental Reply on June 3, 2008 (#45) and a Second Supplemental Reply on December 17, 2008 (#69).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

In this proceeding, Petitioner challenges his incarceration resulting from his conviction in Maricopa County Superior Court case number 88-10837, primarily on charges

1   of armed robbery.   (Petition #1 at 1.)   That conviction is intertwined with Petitioner's

2   conviction in Maricopa County Superior Court case number 88-11481 on charges of sexual

3   assault.[1] Accordingly, the relevant procedural background for both convictions is addressed.

4   Conversely, it is only the facts of the armed robbery case which are at issue, and so only

5   those facts will be reviewed.

6

7   **A. FACTUAL BACKGROUND**

8           In disposing of Petitioner's original direct appeal, the Arizona Court of Appeals

9   summarized the facts underlying the armed robbery convictions  as follows:

10                   Appellant's armed robbery convictions arose out of holdups of
            two Phoenix retail establishments, both involving lone female
11          employees. A witness to the second robbery provided police with a
            description of the truck and its license number. Police engaged in a
12          high-speed chase for fifteen minutes before abandoning pursuit.
            Vehicle registration confirmed that appellant was the truck's owner.
13                   The police undertook surveillance at the appellant's address and
            followed as he and his girlfriend drove to a laundromat in the
14          girlfriend's car. Police officers then arrested appellant inside the
            laundromat on a California fugitive warrant.
15                   At the police station following appellant's arrest, the girlfriend
            consented to a search of her car. Police seized a backpack which the
16          girlfriend advised them belonged to appellant and a writing tablet lying
            next to the backpack. Inside the backpack, officers found a bank bag
17          containing $682. The top page of the writing tablet contained the
            following:
18                           Store truck. [encircled] Get canopy for truck. Get
                     paint job. Hair cut. Truck registration.
19                   A detective testified that he later went to the jail to have appellant
            fingerprinted and to advise him of additional charges that were being
20          filed. Appellant initiated a conversation in which he told the detective
            that he had hidden the money from the robberies under a bush after the
21          chase.

22   (Exhibit D, Mem. Dec. 4/9/92 at 1-2.)

23   //

24   //

25

26          _____

27          [1]   Case number 88-11481 also included charges of armed robbery.   (Exhibit B,
     Opening Brief at 6.)  However, for ease of reference, case number 88-11481 is referred to
28   as the "sexual assault" case, and case number 88-10837 is referred to as the "armed robbery
     case."

**B. PROCEEDINGS AT TRIAL**

On November 29, 1988, in Maricopa County case number 88-10837, Petitioner was indicted on three counts of armed robbery, one count of unlawful flight, and one count of kidnaping. (Exhibit B, Opening Brief at 4.) Petitioner was convicted by a jury on two of the counts of armed robbery and one count of unlawful flight from law enforcement, and prior to sentencing pled no contest to one count of sexual assault. (Exhibit D, Memorandum Decision at 1; Exhibit A, M.E. 8/9/89.)

On December 20, 1988, Petitioner was charged in a separate indictment in Maricopa County case number 88-11481, the sexual assault case, with two counts of armed robbery and two counts of sexual assault. Petitioner eventually entered into a plea agreement whereby he pled guilty to one count of sexual assault. (Exhibit B, Opening Brief at 6.)

The sentencing in both cases occurred on October 27, 1989. (*Id.*) In case number 88-10837, Petitioner was sentenced to 14 years on one armed robbery count, and a concurrent two and one-half years on the unlawful flight count. He was sentenced to a consecutive 21 year term on the other armed robbery. (Exhibit A, Sentence 10/27/89.) In case number 88-11481, Petitioner received an aggravated sentence of 21 years on the sexual assault charge, to run consecutively to his 21 year sentence for armed robbery in case number 88-10837. (Exhibit B, Opening Brief at 7.)

**C. PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed a consolidated appeal in both cases. In the armed robbery case, he challenged the denial of a motion to suppress and admission of statements to police in the armed robbery case, and the denial of a motion for directed verdict. In the sexual assault case, he challenged the voluntariness of Petitioner's plea in the sexual assault case. (Exhibit B, Opening Brief at i; Exhibit C, Supplemental Brief at i.) The Arizona Court of Appeals affirmed the convictions and sentences on April 9, 1992 (Exhibit D).

Petitioner filed a Motion for Reconsideration (Reply, #30, Exhibit D), which was summarily denied on November 4, 1992 (*id.*).

1    Petitioner filed a Petition for Review by the Arizona Supreme Court, again attacking

2  both convictions.  (Exhibit E, PFR at 2-3.)  That petition was summarily denied by an Order

3  (Exhibit F) issued April 21, 1995.

4    Petitioner did not seek certiorari review.

5

6  **D.  PROCEEDINGS ON POST-CONVICTION RELIEF**

7    On February 16, 1996, Petitioner filed a Notice of Post-Conviction Relief (Exhibit G),

8  and on September 20, 1996, he filed his *Pro Per* Petition for Post Conviction Relief (Exhibit

9  I).  By an Order (Exhibit L) dated July 15, 1997 and filed July 17, 1997, the PCR court

10  summarily dismissed the petition.  The denial was based in part on the Court's intervening

11  re-sentencing as a result of Petitioner's successful motion to withdraw his plea in the sexual

12  assault case, #88-11481 (*see* Exhibit L at 1), as discussed hereinafter.

13    Although the caption of the PCR Notice referenced both cases, the caption of the

14  PCR petition referenced only  the armed robbery case, #88-10837, and the prayer for relief

15  sought only a "new trial."  (Exhibit I at 59.)  All further orders, petitions, etc. on this petition

16  referenced only case number 88-10837.  As discussed hereinafter, Petitioner simultaneously

17  challenged case number 88-11481 through a successful Motion to Withdraw Plea (Exhibit

18  H), resulting in the vacating of that conviction, and vacating of his sentence in the armed

19  robbery case.  (*See* Exhibit J, ME 9/27/96.)

20    Petitioner filed a Petition for Review (Exhibit M), challenging the denial of his PCR

21  petition.  That petition was summarily denied by the Arizona Court of Appeals in an Order

22  (Exhibit O) filed September 10, 1998.  Petitioner then filed a Petition for Review by the

23  Arizona Supreme Court (Exhibit P), which was summarily denied by an Order (Exhibit R)

24  filed February 19, 1999.

25

26  **E.  MOTION TO WITHDRAW PLEA & RESENTENCING**

27    On March 12, 1996 (during the pendency of his first PCR proceeding), Petitioner filed

28  a Motion to Withdraw Plea in the sexual assault case, #88-11481, coupled with a motion for

- 4 -

re-sentencing in both cases.  (Exhibit H.)   Petitioner argued that the plea agreement in the sexual assault case included a promise that his sentence in that case would be concurrent with any sentence imposed in a third case then pending in Pima County.  Instead, the Pima County court issued a consecutive sentence.  Petitioner further argued that because the sexual assault conviction had been relied upon to enhance his sentences in the armed robbery case, #88-10837, that sentence should be vacated. The trial court granted the motion to withdraw plea, finding that Petitioner's plea was involuntary as a result of Petitioner's reliance on representations concerning the Pima County case sentencing.  Consequently, the conviction in the sexual assault case was vacated and the sentence in the intertwined armed robbery case, # 88-10837, was vacated and re-sentencing ordered.  (Exhibit J, M.E. 9/27/96.)

As a result, Petitioner was re-sentenced on April 4, 1997 in the armed robbery case, #88-10837, to the same terms of imprisonment originally imposed (*i.e* 14 years and 2 1/2 years concurrent, and 21 years consecutive), but with the new proviso that all sentences were consecutive to the sentence in the Pima County case.[2]  (Exhibit K, Sentence 4/4/97.)

Thereafter, Petitioner proceeded with his first PCR proceeding, discussed herein above, and instituted his second direct appeal, discussed hereinafter.

## F. SECOND DIRECT APPEAL

Upon being re-sentenced (and during the continuation of his first PCR proceeding), Petitioner filed his second direct appeal challenging his conviction and sentence in the armed robbery case, #88-10837.  (*See* Exhibit Q, Opening Brief.)  The Arizona Court of Appeals found challenges to Petitioner's *conviction* precluded by failure to raise them in his first appeal.  The Court rejected his remaining claims, and affirmed his sentences.  (Exhibit T, Mem. Dec. 5/20/99.)

Petitioner filed a Petition for Review (Exhibit V), seeking review by the Arizona Supreme Court.  That petition was summarily denied by an Order (Exhibit X) issued March

---

[2]  In the Pima County case, Petitioner received a sentence totaling 221.25 years. (Exhibit T, Mem. Dec. 5/20/99 at 2.)

3, 2000.

In the interim, as discussed herein above, Petitioner's petition for review on his first PCR petition had also been denied.  (*See* Exhibit R, Order by Arizona Supreme Court, 2/19/99.)

Petitioner did not seek certiorari review.

## G.  SECOND PCR PROCEEDING

On May 4, 1999 (during the pendency of his second direct appeal, but following termination of review on his first PCR proceeding), Petitioner filed his second PCR Petition (Exhibit S), asserting ineffective assistance of counsel at trial.  Petitioner notes that no PCR Notice had been filed.  (Petition #1 at 2.)  The PCR court summarily dismissed this petition as "either already addressed or not raised in his previous PCR proceedings."  (Exhibit U, M.E. 6/3/99.)

Petitioner then filed a Petition for Review (Exhibit W), seeking review by the Arizona Court of Appeals.  That Petition was summarily denied.  (Exhibit Z, Order 4/19/00.) Petitioner then sought review by the Arizona Supreme Court (Exhibit AA, PFR), which was also summarily denied.  (Exhibit BB, Order 12/1/00.)

## H.  THIRD PCR PROCEEDING

On March 22, 2000 (after denial of his second PCR petition, but during pendency of review therefrom), Petitioner commenced his third PCR proceeding by filing a Notice of Post Conviction Relief (Exhibit Y).  He filed through counsel his Petition (Exhibit CC) on July 20, 2001, asserting that a significant change in the law concerning motions to sever, called for the vacating of his conviction.  The PCR Court summarily rejected the petition, finding that the relied upon change applied only prospectively.  (Exhibit DD, M.E. 12/14/01.)

Petitioner sought review by the Arizona Court of Appeals (Exhibit EE, PFR 1/14/03), which was summarily denied (Exhibit FF, Order 8/20/03.)

Petitioner then sought review by the Arizona Supreme Court (Exhibit GG, PFR

1   10/6/03), which was summarily denied by an Order (Exhibit HH), filed  on February 17,

2   2004.

3

4   **I.  FOURTH PCR PROCEEDING**

5       On July 19, 2004 (over five months after the Arizona Supreme Court's ruling (Exhibit

6   HH) in his third PCR proceeding), Petitioner commenced his fourth PCR proceeding by

7   filing a Notice of Post-Conviction Relief (Exhibit II)  seeking relief pursuant to *Blakely v.*

8   *Washington*, 542 U.S. 961 (2004) as a significant change in the law.  The PCR Court

9   summarily dismissed the proceeding, finding that the petition was untimely, and that no

10  exception for changes in the law applied because *Blakely* and related cases were not

11  retroactively applicable to Petitioner.  (Exhibit JJ, M.E. 7/27/04.)

12      Petitioner sought review by the Arizona Court of Appeals, which was summarily

13  denied (Exhibit KK, Order 7/19/05.)

14      Petitioner then sought review by the Arizona Supreme Court, which was summarily

15  denied by an Order (Exhibit LL) filed February 14, 2006.

16

17  **J.  PRESENT FEDERAL HABEAS PROCEEDINGS**

18      **Petition** - Petitioner commenced the present proceeding by filing his Petition for Writ

19  of Habeas Corpus (#1) on June 28, 2006.  The Petition reflects that it was mailed on June 26,

20  2006. (#1 at 9.)   The Petition asserts the following thirteen grounds for relief:

21      (1)     **Illegal Search & Seizure** - police conducted an unlawful search and seizure

22              of Petitioner's backpack, bank bag, and notebook, which were in the car in

23              which Petitioner was riding at the time of his arrest;

24      (2)     **Right to Silence** - Petitioner was questioned by the police after he invoked his

25              right to remain silent;

26      (3)     **Insufficient Evidence of Weapon** - there was insufficient evidence to convict

27              Petitioner of armed robbery because there was insufficient evidence of a

28              weapon;

(4) **Double Jeopardy** - Petitioner was fined twice for the same offense;

(5) **IAC re Suppression** - Petitioner received ineffective assistance of counsel because counsel failed to move to suppress statements made to the police;

(6) **IAC re Consent to Search** - Petitioner received ineffective assistance of trial and appellate counsel because they failed to raise the issue of an unlawful consent search after Petitioner had invoked his right to counsel;

(7) **IAC re Illegal Search & Seizure** - Petitioner received ineffective assistance of trial and appellate counsel because they failed to raise the issue of the unlawful search and seizure of Petitioner's backpack, bank bag, and notebook from the car;

(8) **IAC re Seizure of Notepad** - Petitioner received ineffective assistance of trial and appellate counsel because they failed to raise the issue of the unlawful search and seizure of Petitioner's notepad in violation of the plain view doctrine;

(9) **IAC re Self-Incrimination** - Petitioner received ineffective assistance of trial and appellate counsel because they failed to raise the issue of Petitioner's privilege against self-incrimination;

(10) **IAC re Insufficient Evidence of Weapon** - Petitioner received ineffective assistance of appellate counsel because counsel did not raise the insufficiency of the evidence of a weapon;

(11) **IAC re Prior Convictions** - Petitioner received ineffective assistance of trial counsel because counsel failed to investigate the admissibility of prior convictions, and Petitioner did not testify because the attorney said the convictions would be used to impeach Petitioner;

(12) **Improper Joinder** - the trial court improperly joined counts, which led the jury to believe that Petitioner had a propensity to commit bad acts; and

(13) **Right to Jury re Sentencing** - the trial court enhanced the sentence based on facts not found by the jury.

On August 23, 2006, Petitioner filed a Motion for Leave to File Memorandum of Law in Support of Petition (#9).  That motion was granted by an Order (#13), filed October 16, 2006, which recognized that the proposed memorandum of law was included in the motion.

**Answer** - Respondents filed their Answer (#12) on October 13, 2006, arguing that Petitioner's petition was untimely, and that his claims in Grounds 3, 4, 11, 12, and 13 were unexhausted and procedurally defaulted, and that *Blakely* is not retroactively applicable to Petitioner.  Respondents do not otherwise address the merits of the Petition.

**Reply** - Petitioner filed his Reply (#30) on October 5, 2007, arguing that his Petition is timely because he had state post-conviction proceedings pending at all times other than the periods February 17, 2004 to July 19, 2004, and February 13, 2006 to June 26, 2006.  (#30 at 4.) Petitioner argues:

(1)     as to the timeliness issue: that his fourth PCR proceeding was not plainly dismissed as untimely; he began preparing his habeas petition in February, 2004, but the inadequate law library precluded him from proceeding apace; he was faithfully trying to exhaust his *Blakely* claim, and it would be unfair to charge the time he spent doing so against him;

(2)     as to the equitable tolling issue, he was relying upon Ninth Circuit law, which at the time, would have continued statutory tolling based on his 4th PCR Petition, since the rejection of that petition as untimely was intertwined with consideration of the merits of his federal claim;

(3)     Arizona Rules of Criminal Procedure 32.2(b) and 32.4(a) are not independent and adequate state grounds for denying his *Blakely* claim;

(4)     as to Ground 3, he fairly presented this claim by asserting an identical state law claim and cited Arizona precedent analyzing and applying federal law; and any procedural default would have been caused by ineffective assistance of appellate counsel; and he is actually innocent of Count I based upon an intervening interpretation of the armed robbery statute;

(5)     as to Ground 4, he raise an identical state law claim on double jeopardy;

(6)     as to Ground 11, this claim of ineffective assistance re the prior convictions cannot be procedurally defaulted because it involved a fundamental right, *i.e.* the right to testify in his own defense,  requiring a voluntary and knowing waiver; and

(7)     as to Ground 12 (improper joinder), there was no procedural default because Petitioner asserted the claim under state law (*Ives*) which references and analyzes federal law, and the state courts violated Petitioner's rights to equal protection by failing to apply that state law.

**First Supplemental Answer** - On February 22, 2008, the Court noted a variety of issues arising under the original briefs, and provide an opportunity for the parties to supplement their arguments.  (Order 2/22/08, #32.)

On March 12, 2008, Respondents filed a supplemental Response (#34), arguing: (1) that Petitioner's original sentence of October 27, 1989 controlled the finality issue with regard to any claim arising from Petitioner's convictions, as opposed to claims arising from his re-sentencing; (2) that despite the consideration of the merits of Petitioner's claims in his 4th PCR petition, the dismissal of that petition was on timeliness grounds, and thus it provided no statutory tolling, and that any such tolling would not apply to claims attacking Petitioner's conviction; (3) that under the "last reasoned decision" standard, the silent denials of Petitioner's petitions for review renders them as untimely petitions; and (4) Petitioner is not entitled to equitable tolling because: (a) it is not permitted under the AEDPA; (b) any deficiency in law libraries would not be an impediment to filing, and that the deficiencies decried by Petitioner would not have prevented him from timely filing; (c) the changes in law rent by *Pace* were not justification for tolling, in any event the overturning of circuit court precedent is not an "extraordinary circumstance", Petitioner's miscalculation, even though based on Ninth Circuit precedent, is not a basis for equitable tolling, and Petitioner couldn't have relied on the erroneous Ninth Circuit precedent because he didn't have access to a law library; and (d) Petitioner has not shown diligence.

**First Supplemental Reply** - On June 3, 2008, Petitioner filed his Supplemental Reply

(#45).  Petitioner argues: (1)  that his resentencing marked the commencement of his limitations period; (2) that his fourth PCR filing was not dismissed as untimely because it raised a claim based on a change in the law; (3) that the appellate courts did not find his fourth PCR petition untimely; and (4) equitable tolling should apply.

**Second Supplemental Answer** - On August 20, 2008, the Court advised the parties that a preliminary conclusion had been reached that the petition was not barred by the statute of limitations, and directed that Respondents address the merits of Grounds 1, 2, 5, 6, 7, 8, 9, and 10.  (Order 8/20/08, #51.)

On September 9, 2008, Respondents filed their second Supplement to Answer (#57), arguing that:

(1)     as to Ground 1,  under the limitations adopted in *Stone v. Powell*, 428 U.S. 465, 494-495 (1976) Petitioner cannot rely upon the exclusionary rule on habeas, having been provided a full a fair hearing in the state courts;

(2)     as to Ground 2, the state courts properly found Petitioner's incriminating statements did not result from any interrogation; Petitioner has not exhausted any claim in Ground 2 that the request for a consent to search was made afer invocation of the right to counsel; and any request for a consent to search is not an interrogation;

(3)     as to Ground 5, Petitioner has failed to show ineffective assistance because Petitioner's incriminating statements were not the fruit of the disputed search; even if the fruit, it was too attenuated to require suppression; and Petitioner has failed to show prejudice because the strong evidence from the witness statements would have resulted in a conviction in any event;

(4)     as to Ground 6, Petitioner has failed to show ineffective assistance because a consent to search is not an interrogation prohibited by the Fifth Amendment; the disputed search yielded no incriminating evidence; and appellate counsel could have reasonably declined to argue the issue under the applicable "fundamental error" review standard;

(5)   as to Ground 7, Petitioner has failed to show ineffective assistance because Petitioner did not have standing to challenge the transportation of the third party's vehicle to the impound lot; it was the search of the backpack in the vehicle which produced incriminating evidence;

(6)   as to Ground 8, Petitioner has failed to show ineffective assistance because the notepad was in plain view in the truck, and plainly incriminating; appellate counsel did argue the plain view issue, albeit unsuccessfully, and Petitioner fails to show the argument was inadequate; and Petitioner has not shown prejudice because the strong evidence from the witnesses would have resulted in conviction without the notepad;

(7)   as to Ground 9, Petitioner has failed to show ineffective assistance because counsel did argue at the voluntariness hearing that Petitioner invoked his right to counsel; Petitioner fails to show that he was prejudiced by appellate counsel's citation of an overturned case, because counsel cited the controlling law and made the correct legal argument; Petitioner fails to show appellate counsel was ineffective for failing to distinguish the *Edwards* case because it was applicable to an assertion of a right to counsel even though it dealt with a right to silence; and Petitioner cannot show prejudice from the failure to suppress given the other evidence of Petitioner's guilt; and

(8)   as to Ground 10, Petitioner cannot show appellate counsel was ineffective for failing to challenge one armed robbery charge on the basis of the absence of a gun, because counsel did argue the point, and there was evidence of use of a toy gun; and Petitioner fails to establish appellate counsel's deficiency concerning the gun, because viewed in a light favorable to the prosecution, there was sufficient evidence on the point.

**Second Supplemental Reply** - On December 17, 2008, Petitioner filed his Second Supplemental Reply (#69).  Petitioner argues that he was diligent, and thus he is entitled to equitable tolling.  As to the merits of his claims, he argues:

(1)   as to Ground 1, evidence showed the evidence was not in "plain view" and theat there was an absence of probable cause to trigger the "plain view" doctrine;

(2)   as to Ground 2, police officers repeated initiated contact with him after he invoked his right to counsel, including obtaining consent to search, and thus violated his rights;

(3)   as to Ground 5, the authorities relied on to establish that there was insufficient relationship between the illegal search and his statements are distinguishable; that the truck owner could not validly waive Petitioner's rights by consenting to the search of the truck; and Petitioner was not permitted to develop a factual basis to establish prejudice, and the return of on not-guilty verdict suggests a conviction was not assured;

(4)   as to Ground 6, Respondents ignore state precedent forbidding police from obtaining a consent to search after a right to counsel is invoked, and Petitioner is entitled (even in a federal habeas case) to rely on state precedent to show ineffective assistance; the truck photos were evidence obtained as a result of the improper obtained consent and were highly prejudicial evidence;

(5)   as to Ground 7, the relevant fact is that police knew Petitioner had property in the truck prior to impounding it, and thus improperly seized Petitioner's property; and evidence suggests that the note pad was moved to plain view and the backpack tampered with;

(6)   as to Ground 8, there was no probable cause to support application of the "plain view" doctrine; the illegal seizure of Petitioner's property precludes application of the doctrine; the evidence established that the notebook was not in plain view; there was insufficient evidence to establish the incriminating nature of the notepad, and case law indicates a closed notepad is not incriminating and the cases to the contrary cited by Respondents are inapposite; trial counsel failed to adequately develop the record on or pursue

these issues; and appellate counsel failed to adequately support his arguments on the issue;

(7)    as to Ground 9, although counsel argued *Edwards* and *Roberson*, he failed to appreciate or argue the difference between invoking the right to silence and the right to counsel, and thus failed to make the correct legal argument; counsel failed to call other witnesses to establish improper contact by police officers; officer Van Meter was cognizant that his improper contact with Petitioner would likely result in incriminating statements; although appellate counsel raised the issues, he failed to argue facts which supported the assertion of a interrogation and its functional equivalent; and

(8)    as to Ground 10, appellate counsel failed to assail the absence of evidence on a weapon, and to counter in a reply brief the claims to the contrary; that Respondents improperly select portions of testimony to discredit to support the conviction; that the evidence fails to connect Petitioner to the toy gun, and that reasonable speculation cannot support the conviction.

## III. APPLICATION OF LAW TO FACTS

### A.  STATUTE OF LIMITATIONS

#### 1.   One Year Limitations Period

Respondents assert, *inter alia*, that Petitioner's Petition is untimely.  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.  28 U.S.C. § 2244(d).  In *Calderon v. U.S. District Court,* 128 F.3d 1283 (9th Cir. 1997), *overruled on other grounds*, 163 F.3d 530 (9th Cir. 1998) (real party-in-interest was Rodney Gene Beeler)(hereinafter "Beeler"), the court noted that prior to § 2244(d)'s enactment "state prisoners had almost unfettered discretion in deciding when to file a federal habeas petition" and that "delays of more than a decade did not necessarily bar a prisoner from seeking relief."

1   *Beeler*, 128 F.3d at 1286. The *Beeler* court held that the provisions of § 2244(d)

2   "dramatically changed this landscape" and a petitioner was now "required to file his habeas

3   petition within one year of the date his process of direct review came to an end." *Id.*

4   Petitions filed beyond the one year limitations period are barred and must be dismissed. 28

5   U.S.C. § 2244(d)(1).

6

7   **2.  Commencement of Limitations Period**

8       **Pre-existing Judgments** - The *Beeler* court, following other circuits, also held that

9   the period of limitations "did not begin to run against any state prisoner prior to the statute's

10  date of enactment" of April 24, 1996.  *Beeler,* 128 F.3d at 1287.  Thus, all federal habeas

11  corpus claims concerning state court judgments finalized prior to April 24, 1996, had to be

12  filed by April 23, 1997, or they were barred by the statute of limitations absent a showing

13  that the circumstances surrounding the filing of the petition fell into one of the categories

14  listed in § 2244(d)(1)(B)-(D).

15      **Direct Review** - The one-year statute of limitations on habeas petitions generally

16  begins to run on "the date on which the judgment became final by conclusion of direct review

17  or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

18      Petitioner's original judgment (Exhibit A), issued October 27, 1989, was under direct

19  review until April 21, 1995, when the Arizona Supreme Court denied review (Exhibit F).

20  However, that judgement was not final until expiration of the time for Petitioner to file a

21  petition for a writ of certiorari from the United States Supreme Court. *Bowen v. Roe,* 188

22  F.3d 1157, 1158 (9th Cir.1999).  Pursuant to Rule 13, Rules of the Supreme Court of the

23  United States, that time expired "90 days after entry of the order denying discretionary

24  review." Thus, Petitioner's original judgment became final on July 20, 1995.  Because this

25  was prior to the effective date of the AEDPA, Petitioner's one year would not have begun

26  running as to the original judgment until the AEDPA's effective date, April 24, 1996.

27      However, that judgement was vacated on September 27, 1996 (Exhibit J), and

28  Petitioner was re-sentenced on April 4, 1997 (Exhibit K).  Respondents argued that because

1   re-sentencing did not occur on direct appeal, this re-sentencing is irrelevant.  (Answer, #12
2   at 4, n. 1.)

3        In the intervening decision in  *Burton v. Stewart*, 549 U.S. 147 (2007), the Court
4   concluded that for purposes of the habeas statute of limitations, "[f]inal judgment in a
5   criminal case means the sentence. The sentence is the judgment." *Id.* at 156-157 (quoting
6   *Berman v. United States,* 302 U.S. 211, 212 (1937)).

7        Respondents argue that *Burton* does not apply because: (1) it was not a statute of
8   limitations case, but a successive petition case; (2)  it involved a resentencing granted as part
9   of the direct review process, while Petitioner's resentencing was granted on collateral review;
10  and (3) a series of cases clarify that a resentencing does not reset the statute of limitations
11  clock.  (Supp. Resp. #34 at 3-4.)

12       It is true that *Burton* was not a statute of limitations case.  However, the relevant
13  discussion of finality  in *Burton* was specifically directed to the habeas statute of limitations.
14  It was intended to dispose of the defendant's arguments that he should be permitted to file
15  successive petitions attacking the original conviction and the subsequent resentencing, to
16  avoid the risk that his challenges to the conviction would be time barred by the time he could
17  challenge his resentencing.  The Court's intention that *Burton* impact limitations questions
18  is illustrated by the fact that they vacated and remanded for reconsideration in light of *Burton*
19  the Eleventh Circuit's dismissal on timeliness grounds in *Ferreira v. Secretary, Dept. of*
20  *Corrections,* 494 F.3d 1286, 1288 (11ᵗʰ Cir. 2007).  *See Ferreira v. McDonough,* 549 U.S.
21  1200 (2007).

22       With regard to the cases cited by Respondents to avoid the effect of *Burton*, many of
23  them predate *Burton*, which was decided January 9, 2007.[3]  Others do not address the effect

24

25

26       [3]  These include: *Clay v. United States*, 537 U.S. 522, 525 (2003); *Lozano v. Frank*,
27  424 F.3d 554, 555–56 (7th Cir. 2005); *Caldwell v. Dretke*, 429 F.3d 521, 530 (5th Cir. 2005);
    *Linscott v. Rose*, 436 F.3d 587 (6th Cir. 2006); and *Hepburn v. Moore*, 215 F.3d 1208 (11th
28  Cir. 2000).  (Supp. Resp., #34 at 5-6.)

1    of a resentencing.[4]

2           The one relevant, post-*Burton* case cited by Respondents, *Bachman v. Bagley*, 487

3    F.3d 979 (6th Cir. 2007), does not make reference to *Burton*, and thus does not distinguish

4    it.  Indeed, when Bachman returned to the district court with a subsequent petition, the

5    district court noted that *"Burton* stands for the proposition that 'a habeas petitioner who files

6    his first or only habeas petition after a re-sentencing may properly include all claims from

7    the underlying conviction in that petition, since his criminal case did not end, triggering the

8    statute of limitations clock, until sentencing was completed.'" *Bachman v. Wilson*, 2007 WL

9    4553988 (N.D. Ohio 2007) (citing *Burton*, 127 S.Ct. at 798)).

10          Moreover, *Bachman* was based on the Sixth Circuit's  rejection of Eleventh Circuit

11   precedent, which precedent the Ninth Circuit adopted long ago.  In *Bachman*, the court

12   concluded that a sexual predator designation, issued seven years after the conclusion of direct

13   review, did not reset the statute as to any claims relating to the underlying conviction and

14   sentence.  The Sixth Circuit relied on pre-*Burton,* Sixth circuit precedent holding that a

15   resentencing resets the habeas clock only as to challenges to the resentencing, not challenges

16   to the conviction or original sentence.  487 F.3d at 982-983 (citing *DiCenzi v. Rose*, 452 F.3d

17   465 (6th Cir.2006).  In doing, so, the Sixth Circuit explicitly rejected Eleventh Circuit

18   precedent holding "that resentencing restarts the statute of limitations period for all of the

19   claims in a habeas petition, including those that arise from the original conviction."

20   _____

21          [4] *O'Neal v. Kenny*, 501 F.3d 969 (8th Cir. 2007), decided September 6, 2007, did not
     address a resentencing.  Rather, it involved a "new direct appeal" granted as a result of a state

22   post-conviction relief petition.  The Eighth Circuit concluded that "under Nebraska law, a
     new direct appeal does not constitute direct review for AEDPA purposes."  501 F.3d at 971.

23   Thus, there was no new sentence at play in *O'Neal*.  Moreover, the Supreme Court recently
     vacated the Eighth Circuit's decision, 129 S.Ct. 992 (2009) and remanded for reconsideration

24   in light of *Jimenez v. Quarterman*, 555 U.S. ----, 129 S.Ct. 681 (2009) (grant of delayed state

25   direct appeal resets habeas statute of limitations to run from conclusion of delayed appeal).
            In *Graham v. Borgen*, 483 F.3d 475, 482–83 (7th Cir. 2007), although the defendant

26   moved for a resentencing long after his one year had otherwise expired, the request was

27   denied.  Nonetheless, he argued that the proceedings on the motion were a continuation of
     direct review, such that their conclusion marked the commencement of the limitations period.

28   Thus, there was no new sentence at play in *Graham*.

*Bachman*, 487 F.3d at 984 (citing *Walker v. Crosby*, 341 F.3d 1240, 1246 (11th Cir.2003)).

In contrast, the Ninth Circuit has adopted the rationale of the Eleventh circuit.  In *U.S. v. LaFromboise,* 427 F.3d 680 (9ᵗʰ Cir. 2005), the court was faced with a motion to vacate under 28 U.S.C. § 2255 filed by a defendant whose original conviction had been vacated on direct appeal, but only as to some of the charges.  On remand to the district court, the government dismissed the reversed counts, and so the district court never entered an amended sentence or judgment.  The defendant then filed a motion to vacate, which was dismissed as untimely because it had been filed more then a year after the Court of Appeals' decision, which the district court reckoned as the point of finality.  The Ninth Circuit reversed, finding because the original sentence had been vacated on direct appeal and no amended judgment entered, the "conviction is not yet final and the one-year limitation period has not begun to run." 427 F.3d at 683.

In so doing, the Ninth Circuit referenced the Eleventh Circuit precedent for measuring finality of the entire conviction from a resentencing, including the *Walker* decision rejected by the Sixth Circuit in *Bachman*.  "Our holding here follows the Eleventh Circuit's decision in *Maharaj v. Secretary for the Department of Corrections*, which noted that '[i]n the context of a federal habeas petition, the statute of limitations runs from the date of state resentencing and not the date of the original judgment.'"  427 F.3d at 686 (citing *Maharaj*, 304 F.3d 1345, 1348 (11th Cir.2002) and *Walker*, 341 F.3d at 1246).

Still, Respondents argue that this only applies where the sentence is vacated on direct review, and Petitioner's sentence was vacated on collateral review via his motion to withdraw his plea.  Indeed, *Burton* and *LaFromboise* both involved resentencing upon remand from direct review.[5]  But neither expressly conditioned their holding on that fact.

However, the Eleventh Circuit was recently called on to address just such a fact

---

[5] In *Burton*, the defendant (like Petitioner) had obtained a resentencing in 1996 upon request made to the trial court.  However, in *Burton*, there was a second resentencing in 1998, following a reversal on direct appeal.  127 S.Ct. at 795.  It was this second resentencing which the Supreme Court treated as the relevant sentencing for determining finality.

pattern on remand in *Ferreira v. Secretary, Dept. of Corrections.* There, the Eleventh Circuit applied *Burton* to a 2003 resentencing issued as a result of a post-conviction proceeding. 494 F.3d 1286, 1288 (11th Cir. 2007).

> When Ferreira filed his petition in the district court on June 10, 2003, he was "in custody pursuant to" the 2003 judgment, which was based on the December 10, 1997 conviction and the April 14, 2003 [resentencing]. Therefore, the April 14, 2003 judgment that imprisoned Ferreira controls the statute of limitations for this petition because the period begins to run when both the conviction and sentence are final.

*Id.* at 1292-1293. *See also Chew v. Hendricks,* 2007 WL 2437830, 4 (D.N.J. 2007) (*Burton* applied to determine finality from a resentencing issued on post-conviction relief); *Latson v. McDonough,* 2008 WL 681721, 2 (N.D.Fla.,2008) (same); *U.S. v. Murphy,* 2007 WL 3072411, 3 (N.D.Fla.,2007)(citing *Ferreira*) (certificate of appealability on question whether under *Burton* a sentence reduction pursuant to Fed. R. Crim. P. 35 is a resentencing which resets AEDPA clock).

Nonetheless, Respondents argue that the source of resentencing is controlling because "finality" occurs when both the conviction and sentence are final, and that such finality is not upset by a subsequent resentencing on collateral review. Respondents ignore, however, the nature of a habeas proceeding. Habeas is not a review of various judgments. Rather, a habeas corpus proceeding is a challenge to the legality of the petitioner's custody, and that custody must be determined on the basis of the validity of whatever judgment currently holds the petitioner. "*Burton* makes clear that the writ and AEDPA, including its limitations provisions, are specifically focused on the judgment which holds the petitioner in confinement." *Ferreira,* 494 F.3d at 1293.

Thus, as recognized in *Burton,* a petitioner is not held under two separate judgments, one determining his conviction and another setting his sentence. Rather, "[t]he sentence is the judgment." *Burton,* 548 U.S. at 157. Thus, for example, a habeas petitioner who was re-sentenced upon a grant of collateral relief would not challenge two separate judgments in a subsequent habeas, one attacking the original judgment as to errors at trial, and the other attacking the propriety of the new sentence. Rather, he would have, in essence, a single

1   claim: that his current custody was unlawful.  Respondents' approach would require two

2   separate habeas petitions, and would result in the very type of piecemeal habeas litigation

3   that *Burton* recognized the AEDPA was designed to avoid.

4         Thus, this Court is bound to apply the rule adopted by the Ninth Circuit and expressed

5   in *Burton*, that finality for limitations purposes is calculated from a resentencing judgment.

6   Therefore, the undersigned concludes that the relevant judgment is Petitioner's April 4, 1997

7   judgment.

8         Review of this judgment continued until conclusion of Petitioner's direct appeal from

9   this judgment, when the Arizona Supreme Court denied review on March 3, 2000 (Exhibit

10  X).  Petitioner's conviction became final 90 days later, on June 1, 2000, when his time to

11  petition for certiorari review expired.[6]

12        **New Claims** - While the finality of the conviction is the normal commencement date

13  for the habeas limitations period, the statute does provide an exception for changes in the

14  law.  Section 2244(d)(1)(C) provides that the period can run from "the date on which the

15  constitutional right asserted was initially recognized by the Supreme Court, if the right has

16  been newly recognized by the Supreme Court and made retroactively applicable to cases on

17  collateral review."   Petitioner's Ground 13 arguably asserts a change in the law based upon

18  the decisions in *Apprendi v. New Jersey,* 530 U.S. 466 (2000) and  *Blakely v. Washington*,

19  542 U.S. 296 (2004).

20        Here, Petitioner's direct review ended on June 1, 2000.  This was before both the June

21  26, 2000 decision in *Apprendi* and before the 2004 decision in *Blakely*.  This  *could* serve to

22  provide a later commencement date, but only if *Apprendi* and/or  *Blakely* has been "made

23  retroactively applicable to cases on collateral review."  28 U.S.C. § 2244(d)(1)(C).  In *Rees*

24  *v. Hill*, 286 F.3d 1103 (9th Cir. 2002), the Ninth Circuit concluded that *Apprendi* was not

25

26        [6] Even if the original judgment were the relevant date, Petitioner was continuously

27  challenging that conviction through the pendency of his first PCR proceeding, which
    extended from prior to the AEDPA effective date until his second direct appeal was pending,

28  entitling him to statutory tolling for the entire time.

retroactively applicable on habeas review, under the retroactivity standards established by *Teague v. Lane,* 489 U.S. 288, 308-310 (1989) (decisions establishing new rules of criminal procedure are not to be applied retroactively on habeas review, absent certain circumstances). Similarly, in *Cook v. U.S.,* 386 F.3d 949, 950 (9th Cir. 2004), the Ninth Circuit drew upon its decision in *Rees* to conclude that *Blakely* was not retroactively applicable on habeas. Accordingly, the later decisions in *Apprendi* and *Blakely* do not delay the commencement of Petitioner's one year limitations period.

**Normal Expiration of Year** - Based on the foregoing, the undersigned concludes that Petitioner's one year on all his claims began running on the expiration of his time for seeking certiorari review following his second direct appeal, on June 1, 2000. Barring any applicable tolling, Petitioner's limitations period would have commenced running thereafter, and expired one year later on June 1, 2001.

**2. Statutory Tolling**

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statutory tolling applies during the entire time during which the application is pending, including interludes between various stages of appeal on the application. The "AEDPA statute of limitations [is] tolled for 'all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.' " *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999) (quoting *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir.1999)). *See also Carey v. Saffold,* 536 U.S. 214, 217 (2002).

However, once the statute has run, a subsequent post-conviction or collateral relief filing does not reset the running of the one year statute. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

**First PCR Proceeding** - Petitioner's first PCR proceeding was concluded on

1   February 19, 1999 (Exhibit R), prior to the commencement of Petitioner's one year on June

2   2, 2000.  Accordingly, it is not relevant for purposes of statutory tolling.

3   **Second PCR Proceeding** - Although Petitioner's second PCR proceeding was

4   commenced on May 4, 1999 (Exhibit S), prior to the commencement of Petitioner's one year,

5   it was not concluded until December 1, 2000 when the Arizona Supreme Court denied

6   review.  (Exhibit BB).  Thus, Petitioner's limitations period was tolled as a result of this

7   proceeding from the period's commencement on June 1, 2000 until December 1, 2000.

8   **Third PCR Proceeding** - Petitioner's third PCR proceeding commenced on March

9   22, 2000 upon the filing of his Notice of Post-Conviction Relief.  *See Isley v. Arizona*

10  *Department of Corrections*, 383 F.3d 1054, 1055-56 (9th Cir. 2004) ("The language and

11  structure of the Arizona postconviction rules demonstrate that the proceedings begin with the

12  filing of the Notice.") This was prior to the conclusion of petitioner's second PCR

13  proceeding.  Thus Petitioner's limitations period was further tolled until February 17, 2004,

14  when the Arizona Supreme Court denied review on this petition (Exhibit HH).

15  **Fourth PCR Proceeding** - Petitioner commenced his fourth PCR proceeding on July

16  19, 2004 by filing his Notice of Post-Conviction Relief (Exhibit II) seeking relief pursuant

17  to *Blakely* as a significant change in the law.  Respondents argue that this application was

18  dismissed as untimely, and therefore does not toll the running of the statute.   In *Pace v.*

19  *DiGuglielmo*, 544 U.S. 408 (2005), the Court held that when a state post-conviction petition

20  is untimely under state law, then it is not "properly filed" within the meaning of § 2244(d)(2)

21  for purposes of statutory tolling. However, Petitioner contends that the state court's ruling

22  was not based on the petition's untimeliness, but it's lack of merit due to non-retroactivity

23  principles.  (Reply, #30, Memorandum at 5-6.)

24  The general timeliness requirement in Arizona is that the PCR notice "be filed within

25  ninety days after the entry of judgment and sentence or within thirty days after the issuance

26  of the order and mandate in the direct appeal, whichever is the later."  Ariz. R. Crim. P.

27  32.4(a).  Petitioner does not argue that his fourth PCR proceeding met this deadline.  Rather

28  Petitioner argues that his fourth PCR proceeding was permissible because it asserted a claim

1  under Rule 32.1(g) which authorizes PCR claims based on "a significant change in the law

2  that if determined to apply to defendant's case would probably overturn the defendant's

3  conviction or sentence."   Further, he notes that Arizona's timeliness rule provides an

4  exception for such claims.   The rule provides that "[a]ny notice not timely filed may only

5  raise claims pursuant to Rule 32.1(d), (e), (f), (g) or (h)."

6        Indeed the PCR court's order provided:

7              Defendant filed on July 19, 2004 an untimely Notice of Post-
            Conviction Relief.  He now seeks relief pursuant to Rule 32.1(g),
8            Arizona Rules of Criminal Procedure, claiming that *Blakely v.
            Washington*, 542 U.S. ___, 124 S.Ct. 2531 (2004), is a significant
9            change of law that applies to his case.

10  (Exhibit JJ, M.E. 7/27/04 at 1.)  The PCR court proceeded to determine that *Blakely* was not

11  retroactively applicable to final cases.  The court concluded:

12              His conviction is therefore final and he is not entitled to relief
            under Rule 32.1(g).
13              IT IS THEREFORE ORDERED dismissing defendant's Notice
            of Post-Conviction Relief.

14  (Exhibit JJ, M.E. 7/27/04 at 2.)

15        At first blush, the PCR court's pronouncement that the application was "untimely"

16  seems to resolve the matter.  However, the reference to Rule 32.1(g) clarifies that the petition

17  was not dismissed as untimely.  Rather, the trial court was simply noting the application's

18  dependence upon the exception for delinquent claims based on changes in the law.

19        Respondents argue that when the PCR court found that Petitioner was not entitled to

20  relief because *Blakely* was not retroactively applicable, the court was then required to find

21  that his petition was untimely.  If Rule 32.1(g) described a claim based on "a significant

22  change in the law" that *is* "determined to apply to defendant's case," then their argument

23  would have merit.  The determination of the retroactivity question would thus be a limitation

24  on claims falling within the scope of Rule 32.1(g).  The Rule does not do so.  Rather, it

25  authorizes claims based on "a significant change in the law that *if* determined to apply"

26  would change the result.

27        The cases cited by Respondents do not call for a contrary result.  Respondents cite

28

1  *State v. Slemmer*,  170 Ariz. 174, 823 P.2d 41 (1991), for the proposition that the timeliness

2  exception in Rule 32.4 is conditioned upon the retroactivity analysis.  (Supp. Resp. #34 at

3  7-8.) However, *Slemmer* did not address timeliness or Rule 32.4.  Rather, *Slemmer* addressed

4  the exception to Arizona's preclusion bar for claims arising under Rule 32.1(g).  Instructive,

5  however, is their discussion of the analysis under Rule 32.1(g):

6              When a new principle of law is articulated, a defendant whose
             conviction has become final **may seek relief** under Rule 32. That
7             defendant is insulated from the rules of finality and preclusion when,
             as the rule contemplates, there "has been a significant change in the law
8             applied in the process which led" to conviction or sentence. Whether
             **relief may be obtained** under Rule 32 then depends on the question of
9             retroactive application of the new principle of law. That question is to
             be determined by the standards contained in this opinion.

10  *Slemmer*, 170 Ariz. at 184, 823 P.2d at 51 (emphasis added).  Thus, *Slemmer* clarifies that

11  retroactivity is not a precondition to a claim fitting within Rule 32.1(g) (or the procedural

12  exceptions for such claims), but a precondition to relief on such a claim.  The assertion of the

13  change in the law entitled the petitioner to "seek relief"; the retroactivity merely determined

14  whether the "relief may be obtained."

15      Similarly, *State v. Towery*, 204 Ariz. 386, 64 P.3d 828 (2003) was based upon

16  application of Arizona's preclusion bar, rather than its timeliness bar.  The court noted the

17  exception to preclusion for claims under Rule 32.1(g), especially highlighting the proviso

18  that the claim could be based on new "law *if determined to apply to the defendant's case*."

19  204 Ariz. at 389, ¶ 5, 64 P.3d at 831(emphasis in original, quoting Ariz. R. Crim. P.  32.1(g)).

20  The court then stated: "Accordingly, we must first determine whether the [new law] applies

21  retroactively to the petitioners' sentences." *Id.*  Tellingly, after finding that the new law did

22  not apply retroactively, the *Towery* court did not dismiss the petition as precluded, but

23  affirmed the trial court's "denial of post-conviction relief."   Thus, as in *Slemmer*, the

24  exception for claims under Rule 32.1(g) applied, notwithstanding the non-retroactivity of the

25  new law, and the claim was addressed on the merits, including whether the new law applied

26  retroactively.

27      Respondents' reliance on *Binford v. Rhode*, 116 F.3d 396 (9th Cir. 1997), is also

28

- 24 -

1  misplaced.  *Binford* merely recognized that the Arizona timeliness bar, Rule 32.4, has an

2  exception for claims under Rule 32.1(g).  However, *Binford* did not involve the exception

3  for  claims under Rule 32.1(g), but a claim under Rule 32.1(f), based upon "the defendant's

4  failure to appeal from the judgment, sentence, or both within the prescribed time was without

5  fault on the defendant's part." 116 F.3d at 399 (quoting Ariz. R. Crim. P.  32.1(f)).

6       Indeed, a review of the PCR court's ruling shows that the approach of *Slemmer* and

7  *Towery* was followed by the PCR court.  Thus, the court characterized the Notice of Post-

8  Conviction Relief as "untimely", but noted that it sought relief "pursuant to Rule 32.1(g),

9  Arizona Rules of Criminal Procedure."

10       It is true that the effect of a timeliness ruling is not altered because the court considers

11  the merits of the claim as part of the application of the timeliness rule, nor because it offers

12  an alternative basis for its ruling based on another ground.  *Bonner v. Carey*, 425 F.3d 1145,

13  1148-49 (9th Cir. 2005) (citing *Pace*).  Here, however, the merits determination of the  claim

14  was not merely part of the timeliness determination, nor an alternative to it.  Rather, it was

15  a subsequent determination after the finding that the claim was raised under Rule 32.1(g),

16  and thus was not subject to the timeliness rule.

17       Consequently, Petitioner is entitled to statutory tolling for this PCR proceeding.

18       This PCR proceeding commenced on July 19, 2004 when Petitioner filed his Notice

19  of Post-Conviction Relief (Exhibit II).[7] As of that time, 153 days of Petitioner's one year had

20  expired since the Arizona Supreme Court's denial of relief in his third PCR proceeding on

21  February 17, 2004.  The proceeding continued until February 14, 2006, when the Arizona

22  Supreme Court denied review. (Exhibit LL.)  With 212 days remaining, Petitioner's one year

23  would have expired on September 14, 2006.  Thus, his current federal petition, filed June 28,

24  2006, was timely.

---

26      [7]  For purposes of calculating tolling under § 2244(d), the federal prisoner "mailbox

27  rule" applies.  Under this rule, a prisoner's state filings are deemed "filed" when they are delivered to prison officials for mailing.  *Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000).

28  Because it would not alter the outcome, the undersigned does not attempt to ascertain whether application of the rule would yield an earlier filing date.

**3.  Summary re Statute of Limitations**

Petitioner's conviction became final on June 1, 2000, on the expiration of his time for seeking certiorari review on his second direct appeal following his re-sentencing.  He had state applications for post-conviction relief pending the entire time from then until the filing of the present federal petition, with the exception of the 153 days between his third and fourth PCR petitions, and the 134 days between his fourth PCR proceeding and the filing of his federal petition.  Thus Petitioner had only used 287 days of his one year, and his federal petition was timely.

**B.  PROCEDURAL DEFAULT**

Respondents argue in the Answer (#12) that Grounds 3, 4, 11, 12, and 13 are procedurally defaulted.  Although Respondents categorize Grounds 11 and 13 as procedurally defaulted, their arguments focus upon actual application of state procedural bar. Accordingly, those claims will be addressed in Section C (Procedural Bar), below.[8]

**1.  Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-

---

[8]  The application of a procedural bar does not render a claim unexhausted, nor procedurally defaulted. *See Coleman v. Thompson,* 501 U.S. 722, 729-732 (1991) (discussing the distinct but related nature of the concepts of exhaustion on the one hand, and  the "adequate and independent state procedural grounds" doctrine on the other).

1   conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir.

2   1994).   Only one of these avenues of relief must be exhausted before bringing a habeas

3   petition in federal court.   This is true even where alternative avenues of reviewing

4   constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211

5   (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S.

6   1059 (1989). "In cases not carrying a life sentence or the death penalty, 'claims of Arizona

7   state prisoners are exhausted for purposes of federal habeas once the Arizona Court of

8   Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir.

9   2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

10          **a.  Fair Presentment**

11          To result in exhaustion, claims must not only be presented in the proper forum, but

12   must be "fairly presented."  That is, the petitioner must provide the state courts with a "fair

13   opportunity" to apply controlling legal principles to the facts bearing upon his constitutional

14   claim.  28 U.S.C. § 2254;  *Picard v. Connor*, 404 U.S. 270, 276-277 (1971).  A claim has

15   been fairly presented to the state's highest court if the petitioner has described both the

16   operative facts and the federal legal theory on which the claim is based. *Kelly v. Small*, 315

17   F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d

18   1143, 1149 (9th Cir. 2007)).

19          Because "state and federal courts are jointly responsible for the enforcement of federal

20   constitutional guarantees," "for purposes of exhaustion, a citation to a state case analyzing

21   a federal constitutional issue serves the same purpose as a citation to a federal case analyzing

22   such an issue." *Peterson v. Lampert,* 319 F.3d 1153, 1158 (9th Cir. 2003).  However, a

23   "daisy chain-which depends upon a case that was cited by one of the cases that was cited by

24   one of the cases that petitioner cited is too lengthy to meet [the] standards for proper

25   presentation of a federal claim." *Howell v. Mississippi,* 543 U.S. 440, 443-444 (2005).

26          A state court's actual consideration of a claim satisfies exhaustion. *See Sandstrom v.*

27   *Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of

28   exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see*

*also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).

### **b. Application to Petitioner's Claims**

**Ground 3 (Insufficient Evidence of Gun)** - In Ground 3, Petitioner argues that he was denied due process because  there was insufficient evidence to convict Petitioner of armed robbery because there was insufficient evidence of a weapon. Petitioner argues that he presented this claim on direct appeal,  (Petition, #1 at 7), but in his Reply, he "concedes that he did not specifically label the insufficiency of the evidence claim as a Fourteenth Amendment Due Process violation." (#30 at 15.)  He argues, however, that he asserted an identical state law claim and cited state precedent relying on federal law, *i.e. State v. Garza Rodriguez*, 164 Ariz. 101, 791 P.2d 633 (1990).

In his Supplemental Brief on direct appeal, Petitioner simply argued that the trial court erred by failing to issue a directed verdict on Count I in the armed robbery case because "no gun, either actual or simulate, was seen by the victim."  No reference to federal law was made, and the only citation was to *Garza Rodriguez*.  (Exhibit C, Suppl Brief at 3.)  The Arizona Court of Appeals rejected the argument, relying on *Garza Rodriguez*, on the basis that under state law the victim need not see the weapon, and the evidence showed Petitioner claimed possession and threatened use of a gun, satisfying the requirement of the statute. (Exhibit D, Mem. Dec. at 8.)  The same argument was raised in his Petition for Review by the Arizona Supreme Court, which was summarily denied. (Exhibit E, PFR at 20-21; Exhibit F, Order 4/21/95.)

Petitioner now makes a claim to a denial of due process.  "The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense." *Carella v. California*, 491 U.S. 263, 265 (1989).

However, *Garza Rodriguez* makes no references to the Due Process Clause nor any other federal law or authority.  Rather, it was based solely upon an interpretation of the state armed robbery statute, and held that "that a mere verbal threat to use a deadly weapon,

1    unaccompanied by the actual presence of a deadly weapon, dangerous instrument or

2    simulated deadly weapon, does not satisfy the statutory requirement for a charge of armed

3    robbery." 164 Ariz. at 112, 792 P.2d at 638. Based upon that determination , they concluded

4    that the "facts are insufficient to support a charge of armed robbery." *Id.*  Thus, this case did

5    not turn upon any federal due process issues, but simply upon the proper interpretation and

6    application of state law.

7         Petitioner argues that the standard for insufficiency of the evidence applied in *Garza-*

8    *Rodriguez* was identical to the federal standard, and thus the reference to that case was

9    sufficient.   In support, Petitioner calls for the Court to compare the state standard for

10   insufficient evidence enunciated in *State v. Franklin*, 130 Ariz. 291, 635 P.2d 1213 (1981)

11   with the federal standard under *Jackson v. Virginia*, 443 U.S. 307 (1979), which Petitioner

12   asserts are the same.  (Reply #30 at 16-17.)   Indeed, if *Garza Rodriguez* turned upon issues

13   of insufficient evidence law, then its citation might be deemed the functional equivalent of

14   expressly presenting a coterminous federal law claim.  *See Baldwin v. Reese,* 541 U.S. 27,

15   33 (2004) (declining on procedural grounds to address whether, where an identity between

16   state and federal standards exists, "a petitioner need not indicate a claim's federal nature,

17   because, by raising a state-law claim, he would necessarily 'fairly present' the corresponding

18   federal claim").

19        While the authorities referenced by Petitioner suggest a similarity between the

20   standards, Petitioner fails to show that they are identical, as contemplated in *Baldwin*.

21   Something less than identity is not sufficient.  "[R]aising a state claim that is merely similar

22   to a federal claim does not exhaust state remedies." *Fields v. Waddington,* 401 F.3d 1018,

23   1022 (9th Cir. 2005). "[W]e cannot assume federal claims were impliedly brought by virtue

24   of the fact that they may be 'essentially the same' as state law claims. If a petitioner fails to

25   alert the state court to the fact that he is raising a federal constitutional claim, his federal

26   claim is unexhausted regardless of its similarity to the issues raised in state court." *Casey v.*

27   *Moore,* 386 F.3d 896, 914 (9th Cir. 2004) (citations omitted).  Further, Petitioner bears the

28   burden of showing that identity.  *Id.*  And, the burden of proof of such identity is high. "In

the absence of an affirmative statement by the [state supreme court] that it considers a particular state and federal constitutional claim to be identical, rather than analogous ... Petitioner was required to raise his federal claims affirmatively; we will not infer that federal claims have been exhausted." *Fields v. Waddington,* 401 F.3d 1018, 1024 (9th Cir. 2005).

Moreover, *Garza Rodriguez* was not primarily a case about Arizona sufficiency of the evidence law, but was almost exclusively about interpretation of the state armed robbery statute. Neither the Arizona court in *Garza Rodriguez*, nor Petitioner, nor the Arizona Court of Appeals in Petitioner's case, engaged in any discussion of the insufficient evidence standards.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore,* 386 F.3d 896, 912 n. 13 (9th Cir. 2004).  Thus, Petitioner's mere reference to *Garza Rodriguez* cannot be deemed to have been a fair alert to the state courts that Petitioner intended to assert a federal due process claim in his direct appeal.

Petitioner also argues that he presented this claim in his first PCR proceeding by asserting the failure to raise the due process claim as an instance of ineffective assistance of counsel. (Reply, #30 at 17-18.)  It is true that Petitioner made a related claim in his Petition for Review from his  first PCR Petition. (Exhibit M, PFR at 14-15.)  However, he simply asserted that appellate counsel was inadequate for failing to make a challenge under *Garza Rodriguez*, and did not assert that a federal Due Process claim should have been made. (*Id.*) Likewise, his Petition for Review to the Arizona Supreme Court did not assert counsel's failure to assert a federal due process claim, referencing only a claim under *Garza Rodriguez*. (Exhibit P, PFR at 16-17.)

Moreover, merely raising a related claim of ineffective assistance is insufficient.

> Here, although Rose's Fifth Amendment claim is related to his claim of ineffective assistance, he did not fairly present the Fifth Amendment claim to the state courts when he merely discussed it as one of several

issues which were handled ineffectively by his trial and appellate counsel. While admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts.

*Rose v. Palmateer,* 395 F.3d 1108, 1112 (9th Cir. 2005).

Based upon the foregoing, the undersigned concludes that Petitioner's Ground 3 was never fairly presented to the state courts and is unexhausted.

**Ground 4 (Double Jeopardy)** - In Ground 4, Petitioner argues he was fined twice for the same offense in violation of the Double Jeopardy Clause.  In his Reply, he argues he presented this claim by raising arguments under Ariz. Rev. Stat. § 13-116, which "imposes the same test for being fined twice for the same offense as does the Double Jeopardy" clause.  (Reply, #30 at 19.)  In his second direct appeal, Petitioner argued to both the Arizona Court of Appeals and the Arizona Supreme Court that the imposition of dual felony penalty assessment fees was a violation of Ariz. Rev. Stat. § 13-116.  (Exhibit Q, Opening Brief at 19-20; Exhibit V at 8-9.)

Again, Petitioner cited only state authorities in raising his claims, and made no reference to either state or federal double jeopardy constitutional prohibitions, and cited no federal law.  The state cases cited by Petitioner, *State v. Sheaves*, 155 Ariz. 538, 747 P.2d 1239 (App. 1987) and *State v. Poundstone*, 179 Ariz. 511, 880 P.2d 731 (App. 1994), similarly rely solely upon state statutes, and make no reference to any federal constitutional principles.  And, again, Petitioner offers nothing to establish that state standards under that state statute are identical to federal double jeopardy standards.  *See Casey*, 386 F.3d at 912-914.

Based upon the foregoing, the undersigned concludes that Petitioner's Ground 4 was never fairly presented to the state courts and is unexhausted.

**Ground 12** - In Ground 12, Petitioner argues the trial court improperly joined counts, which led the jury to believe that Petitioner had a propensity to commit bad acts, in violation of his federal due process rights.  Petitioner argues in his Reply that he fairly presented this claim by arguing under *State v. Ives*, 187 Ariz. 102, 927 P.2d 762 (1996) on his second direct

appeal.  (Reply, #30 at 20-21.)

On his second direct appeal, Petitioner argued that the trial court had erred in denying his motion to sever.  (Exhibit Q, Opening Brief at 13-18.)  In so doing, Petitioner argued that severance was required under Ariz. R. Crim. P. 13 *et seq.*, and cited various state authorities, including *Ives*.  Again, Petitioner made no reference to any federal due process right, and cited no federal authority.

He cannot rely upon his reference to *Ives*, because that state case was based solely upon state law.  It looked only to Arizona Criminal Rules 13.3 and 13.4 and related state precedents to determine whether there was a right to severance.  187 Ariz. at 106-109, 927 P.2d at 766-769.  The only federal precedents considered by the Arizona court were on the admissibility of prior bad act evidence to determine whether the denial of severance had been prejudicial.  *Id.* at 109-111, 927 P.2d at 769-771.  Even there, the court noted that the Arizona Rules of Evidence and the Federal Rules were different. *Id.* at 110, 927 P.2d at 770, n. 3.

In his Petition, Petitioner argues he presented Ground 4 in his third PCR proceeding.  That proceeding was founded upon an assertion that *Ives* constituted a change in the law, entitling Petitioner to relief.  (Exhibit EE, PFR.)  Again, Petitioner never mentions any federal due process claim, nor cites to any federal authority other than *Yates v. Aiken,* 484 U.S. 211 (1988).  *Yates* did not involve a due process question, but a question of retroactive application of Supreme Court decisions to cases on collateral review.

Accordingly, the undersigned concludes that Petitioner's Ground 12 was never fairly presented to the state courts and is unexhausted.

**Summary re Exhaustion** - Based on the foregoing, the undersigned concludes that Grounds 3, 4, and 12 of the Petition are unexhausted.

**2.  Procedural Default**

Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly

exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and its timeliness bar set out in Ariz. R. Crim. P.  32.4(a) to establish the procedural defaults. (Answer, #12 at 11-13.) Because of the limited development of Arizona law on the exception to the preclusion bar for claims of "sufficient constitutional magnitude," *see Stewart v. Smith,* 536 U.S. 856 (2002), and the applicability of clear timeliness bars, the undersigned does not reach Respondents' argument on the applicability of the preclusion bar.

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence.  The Arizona Rules of Criminal Procedure do not provide for a successive direct appeal.  *See generally* Ariz.R.Crim.P. 31.  Accordingly, direct appeal is no longer available for Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** - Petitioner can no longer seek review by a subsequent PCR Petition.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).  That time has long since passed.

While Rule 32.4(a) does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h), Petitioner has not asserted that any of these exceptions are applicable to his equal protection claim.  Nor does it appears that

1   such exceptions in Rule 32.1 would apply to this claim.   The rule defines the excepted claims

2   as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence.   Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.   Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Paragraph (f) has no application where the petitioner filed a timely notice of appeal or had no right to appeal, and the notice of post-conviction relief of-right applies only to first petitions filed within 90 days following a judgment based on a guilty or *nolo contendre* plea. *See* Ariz.R.Crim.P. 32.1 (defining when petition of-right).   Paragraph (g) has no application because Petitioner has not asserted a change in the law occurring since his last state PCR petition.

Finally, paragraph (h), concerning claims of actual innocence, has no application to Petitioner's procedural claims. *See State v. Swoopes*, 216 Ariz. 390, 404, 166 P.3d 945, 959

(App. 2007) (32.1(h) did not apply where petitioner had " not established that trial error ...amounts to a claim of actual innocence").  While, Petitioner's Ground 3 is founded on an assertion of insufficient evidence, a mere insufficiency of evidence at trial is not the same as the affirmative offer of "clear and convincing evidence" of actual innocence required under Rule 32.1(h).  *See e.g. Schlup v. Delo,* 513 U.S. 298, 299-300 (1995) (contrasting claims of insufficient evidence and claims of actual innocence).

Accordingly, the undersigned must conclude that review through Arizona's post-conviction relief process is no longer possible for Petitioner's unexhausted claims.

**Summary re Procedural Default** - Petitioner has failed to exhaust his claims in Grounds 3, 4, and 12 of the Petition, and is now procedurally barred from doing so. Accordingly, these claims are procedurally defaulted, and absent a showing of cause and prejudice or actual innocence, must be dismissed with prejudice.

## C. PROCEDURAL BAR

Respondents argue that Petitioner's claims in Grounds 11 and 13 have been disposed of by the state courts on independent and adequate state grounds, *i.e.* Arizona's preclusion bar, and are thus beyond habeas review.

Federal habeas review of a federal claim is precluded for procedurally barred claims, *i.e.* those which have actually been presented to the state court, but were disposed of on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) (citing *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)).   *But see, Stewart v. Smith*, 536 U.S. 856, 860 (2002) ("assum[ing]" independence standard applies on habeas). To be "independent," a state law ruling must not depend on an antecedent ruling on the merits of the federal claim. *See Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985)).  To be "adequate," the state law or rule upon which the state court's ruling rests must be "firmly established" and "regularly applied" at the time of its application. *Harris v. Reed*, 489 U.S. 255 (1989). *See also Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir.

1999) ("firmly established and regularly followed at the time it was applied by the state court").

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit specifically addressed the burden of proving the adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

322 F.3d at 584, 585.

**Ground 11** - In Ground 11, Petitioner argues he received ineffective assistance of trial counsel because counsel failed to investigate the admissibility of prior convictions, and Petitioner did not testify because the attorney said the convictions would be used to impeach Petitioner. (Petition, #1 at 8-17.)  This claim was presented in Petitioner's second PCR proceeding. (Exhibit S, PCR Petition; Exhibit W, PFR.)  In dismissing the PCR petition, the trial court concluded that "defendant is precluded from raising the issue now as it was either already addressed or not raised in his previous PCR proceedings."[9]  (Exhibit U, Order 6/9/99.)  In so doing, the state court made obvious reference to Arizona Rule of Criminal Procedure 32.2(a), which bars as "precluded" PCR claims that either could have been brought in a  direct appeal or post-trial motion, were finally decided "on appeal or in any previous collateral proceeding," or were "waived" in a prior appeal or collateral proceeding.

In his Reply, Petitioner argues that because the claim involves a fundamental right, absent a personal waiver, it cannot be procedurally barred. (Reply, #30 at 19-20.) Rule 32.2's waiver rule applies to different classes of claims.

> Some require a defendant's "personal knowledge" "to waive the constitutional right involved." The State must show that the defendant " 'knowingly, voluntarily and intelligently' [did] not raise" the ground

---

[9]  The Arizona Court of Appeals and Arizona Supreme Court both issued summary denials of review. To determine whether a state procedural ruling bars federal review, the habeas court must look to the "last reasoned opinion on the claim." *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

1          or denial of a right. For all others, the State "may simply show that the
2          defendant did not raise the error at trial, on appeal, or in a previous
           collateral proceeding."

3   *Stewart v. Smith,* 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (hereinafter *Smith*).  *See*

4   *also Cassett v. Stewart*, 406 F.3d 614, 622 (9th Cir. 2005) (citing *Smith*).

5          In essence, Petitioner argues that the state court got it wrong when it decided his claim

6   was precluded.  However, this Court is not free to second guess the state courts on issues of

7   state law.  *Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994)

8          Even if this habeas court were free to second guess the state court's state law

9   determination, Petitioner fails to show that his claim of ineffective assistance is the type of

10  claim which must be personally waived.  Petitioner simply argues that his "lost" right to

11  testify in his own behalf is a "fundamental right", citing *Rock v. Arkansas*, 483 U.S. 44

12  (1987).  The Arizona Supreme Court has held that a simple failure to raise such a claim is

13  sufficient to effect a waiver.  "As a general rule, when 'ineffective assistance of counsel

14  claims are raised, or could have been raised, in a Rule 32 post-conviction relief proceeding,

15  subsequent claims of ineffective assistance will be deemed waived and precluded.'" *State v.*

16  *Bennett,* 213 Ariz. 562, 566, 146 P.3d 63, 67 (2006).

17         It is true that in *Smith*, the Arizona Supreme Court said that "the question of

18  preclusion is determined by the nature of the right allegedly affected by counsel's ineffective

19  performance."  202 Ariz. at 450, 46 P.3d at 1071.  However, that court made clear that this

20  did not apply where a Petitioner had a previous opportunity to raise claims of ineffectiveness.

21         With some petitions, the trial court need not examine the facts. For
22         example, if a petitioner asserts ineffective assistance of counsel at
           sentencing, and, in a later petition, asserts ineffective assistance of
           counsel at trial, preclusion is required without examining facts.

23  *Id.*  Petitioner had raised a variety of claims asserting ineffective assistance of trial counsel

24  in his first PCR petition.[10]  (Exhibit I, PCR Pet. at 9.)  Thus the look-through provided for in

25

26         [10]   It is true that Petitioner's 2nd PCR proceeding was his first filed after his

27  resentencing.  However, he continued to prosecute his first PCR proceeding after his
    resentencing. (*See* Exhibit L, M.E. 7/17/97 (denying 1st PCR Petition on merits); and Exhibit

28  K, Resentence 4/8/97.)  Thus his second PCR proceeding was his indeed a second challenge

1    *Smith* would not apply.

2         Moreover, even if *Smith's* look-through analysis applied, Petitioner points to no

3    authority for the proposition that his underlying right to testify is the type of right which must

4    be personally waived by defendant.   *Rock v. Arkansas*, cited by Petitioner does not so hold,

5    but simply recognizes the existence of such a right.  Indeed, criminal defendants are regularly

6    permitted to forego their right to testify without any formality at all.  The undersigned has

7    found no Arizona authority requiring a personal waiver of such a claim, nor of Petitioner's

8    ineffective assistance claim.

9         Petitioner makes no allegation that Rule 32.2(a) is not an independent and adequate

10   state ground.[11]  Thus, the undersigned must conclude that Petitioner's claim in Ground 11

11   was procedurally barred on independent and adequate state grounds, and is barred from

12   habeas review, absent a showing of cause and prejudice or actual innocence.

13   **Ground 13** - In Ground 13, Petitioner argues that the trial court improperly enhanced

14   the sentence based on facts not found by the jury, thus denying Petitioner his right to trial by

15   jury.  Petitioner asserts this claim was exhausted in his 4th PCR proceeding.  (Petition, #1 at

16   8-20.)  Respondents argue that the 4th PCR proceeding was dismissed as untimely, and that

17   that independent and adequate state ground bars consideration.

18        As discussed above in connection with the statue of limitations, the undersigned has

19   already concluded that the denial of Petitioner's Ground 13 claim was not on the basis that

20   it was untimely, but on the merits, *i.e.* that *Blakely* was not retroactively applicable.

21   Therefore, this claim was not disposed of on independent and adequate state grounds, but

22   upon the merits of the claim, at least insofar as the retroactivity analysis permitted or required

23   the consideration of those merits.

24   _____

25   to the effectiveness of his trial counsel.

26        [11] Petitioner does argue that 32.2(a) is not independent and adequate to bar his *Blakely*

27   claim in Ground 13.  (Reply, #30 at 13-14.)  However, Petitioner's  argument is based on the

28   peculiarity of the analysis applicable to change of law claims under Arizona's procedural

     bars.  Petitioner does not attempt to extend that argument to his other claims.

1    **Summary** - Based on the foregoing, the undersigned concludes that Petitioner's

2    Ground 11 was disposed of by the state courts on independent and adequate state grounds,

3    and according that state court judgment comity precludes this habeas court from now

4    considering it, absent a showing of cause and prejudice or actual innocence.

5

6    **D.  AVOIDING PROCEDURAL BARS OR DEFAULTS**

7    The undersigned has concluded that Petitioners Grounds 3, 4, and 12 are procedurally

8    defaulted, and his Ground 11 is procedurally barred.

9

10   **1.  Cause and Prejudice**

11   If the habeas petitioner has procedurally defaulted on a claim, or it has been

12   procedurally barred on independent and adequate state grounds, he may not obtain federal

13   habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse

14   the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

15   As to Ground 3 (insufficiency of evidence), Petitioner argues that the "cause" for his

16   procedural default is the ineffectiveness of appellate counsel in failing to raise this claim on

17   direct appeal.  (Reply, #30 at 18.)  Ineffective assistance of counsel may constitute cause for

18   failing to properly exhaust claims in state courts and excuse procedural default.[12]  *Ortiz v.*

19   *Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  However, to meet the "cause" requirement, the

20   ineffective assistance of counsel must amount to an independent constitutional violation.  *Id.*

21   As discussed hereinafter in connection with Ground 10, the undersigned concludes that

22   Petitioner's insufficiency of the evidence claim is without merit, and therefore he was not

23   denied effective assistance of counsel.

24   _____

25   [12] A claim of ineffective assistance of counsel showing "cause" is itself subject to the
     exhaustion requirements.  *Murray v. Carrier*, 477 U.S. 478, 492 (1986).  Accordingly, "[t]o
     the extent that petitioner is alleging ineffective assistance of appellate counsel as cause for
26   the default, the exhaustion doctrine requires him to first raise this ineffectiveness claim as
     a separate claim in state court."  *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988).
27   Petitioner now asserts such ineffectiveness in his Ground 10.  Respondents make no
28   argument that this claim was not properly exhausted.

1    Petitioner makes no argument of having cause and prejudice to excuse any other

2    procedural default or procedural bar.

3    Based upon the foregoing, the undersigned finds no "cause" to excuse Petitioner's

4    procedural default or the effect of the state's procedural bar.

5

**2.  Actual Innocence**

7    The standard for "cause and prejudice" is one of discretion intended to be flexible and

8    yielding to exceptional circumstances.  *Hughes v. Idaho State Board of Corrections*, 800

9    F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in

10   an extraordinary case, where a constitutional violation has probably resulted in the conviction

11   of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis

12   added).

13   Here, Petitioner argues that Ground 3 involves a fundamental miscarriage of justice

14   because there was insufficient evidence at trial to meet the state's definition of armed

15   robbery.  (Reply, #30 at 19.)

16   However, it is not sufficient that the petitioner point to some legal insufficiency.

17   *Bousley v. United States*, 523 U.S. 614, 623(1998) ("'actual innocence' means factual

18   innocence , not mere legal insufficiency").  Rather, a petitioner asserting his actual innocence

19   of the underlying crime must show "it is more likely than not that no reasonable juror would

20   have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup*

21   *v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of

22   the new evidence is not sufficient.  Rather, the petitioner must show a probability  that no

23   reasonable juror would have found the defendant guilty.  *Id.* at 329.

24   Petitioner proffers no such showing of actual innocence but simply argues

25   insufficiency of the evidence.  That does not suffice to establish a miscarriage of justice.

26

**3.  Summary re Procedurally Defaulted and Procedurally Barred Claims**

28   Petitioner has failed to establish cause and prejudice or actual innocence.

1   Accordingly, Grounds 3, 4, and 12 are procedurally defaulted, Ground 11 is procedurally

2   barred, and all four such grounds must be dismissed with prejudice.

3

4   **E. GROUND 1: ILLEGAL SEARCH & SEIZURE**

5       For Ground 1 of his Petition, Petitioner argues that police conducted an unlawful

6   search and seizure of Petitioner's backpack, bank bag, and notebook, which were in the car

7   in which Petitioner was riding at the time of his arrest.  Respondents argue that Petitioner

8   cannot rely upon the exclusionary rule on habeas, having been provided a full and fair

9   hearing in the state courts, under *Stone v. Powell*, 428 U.S. 465, 494-495 (1976).  Petitioner

10  replies that the claim has merit because evidence showed the evidence was not in "plain

11  view" and theat there was an absence of probable cause to trigger the "plain view" doctrine.

12      **Exclusionary Rule Does Not Apply on Habeas** - In *Stone*, the Court "weigh[ed] the

13  utility of the exclusionary rule against the costs of extending it to collateral review of Fourth

14  Amendment claims" and found that "the additional contribution, if any, of the consideration

15  of search-and-seizure claims of state prisoners on collateral review is small in relation to the

16  costs." 428 U.S. at 489, 494.  The Court concluded "that where the State has provided an

17  opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not

18  be granted federal habeas corpus relief on the ground that evidence obtained in an

19  unconstitutional search or seizure was introduced at his trial." *Id.* at 494.

20      **Full and Fair Hearing Provided** - Petitioner has not alleged any facts to show the

21  absence of a full and fair hearing in the state courts.  Rather, he has simply attacked the

22  results of that hearing.

23      Moreover, the record would belie any attempt to do so.  Here, Petitioner admits that

24  he was permitted to present this claim in a pre-trial suppression hearing in the trial court.

25  (Petition, #1 at 5-1; Exhibit RR, R.T. 8/1/89 at 33-57.)  He again raised the issue on direct

26  appeal, but the claim as to the notepad was rejected under the "plain view doctrine" and the

27  claim as to the backpack etc. was rejected as asserting harmless error.  (Exhibit A, Mem.

28  Dec. 4/9/92 at 6-7.)  Petitioner points to no limitations on his ability to present his

1    exclusionary rule claim.  He simply asserts that the state court got it wrong when it found the

2    notepad to have been in plain view and any error harmless.  (2ⁿᵈ Supp. Reply #69 at 2.)

3         The Ninth Circuit holds that "[t]he relevant inquiry is whether petitioner had the

4    opportunity to litigate his claim, not whether he did in fact do so or even whether the claim

5    was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9ᵗʰ Cir. 1996).  *But see*

6    *Anderson v. Calderon*, 232 F.3d 1053 (9ᵗʰ Cir. 2000), *overruled on other grounds by Osband*

7    *v. Woodford*, 290 F.3d 1036, 1043 (9th Cir.2002) (no full and fair hearing where 4ᵗʰ

8    Amendment claim relied on Supreme Court decision issued years after trial).[13]

9         **No Erroneous Decision** - Even if the Ninth Circuit recognized an exception for some

10   erroneous decisions, Petitioner fails to establish that an erroneous decision was made.

11        With regard to his backpack and its contents, Petitioner objects to the application of

12   a harmless error rule, arguing that the error could not have been harmless.  (2ⁿᵈ Supp. Reply,

13   #69 at 5.)  However, Petitioner does not support that contention.  The Arizona Court of

14   Appeals noted the other evidence supporting Petitioner's conviction, including the victim's

15   identification of Petitioner's truck by its description and license, Petitioner's high-speed car

16   chase away from police, his eventual confession, a fingerprint from Petitioner on a chair at

17   the scene, and Petitioner's identification in a photo line up by both victims and two officers

18   engaged in the high speed chase.  (Exhibit A, Mem. Dec. 4/9/92 at 6.)  Petitioner does not

19   show why this evidence was not overwhelming, such that failure to exclude the opposed

20   evidence was not harmless.

21        With regard to the notepad, as discussed in Section J in connection with Petitioner's

22   related claim of ineffective assistance in Ground 8, the undersigned concludes that Petitioner

23   fails to show that the notepad was not in plain view and thus properly received in evidence.

24

_____

25        [13]  The Tenth Circuit has held that a defendant has been denied a "full and fair

26   hearing" where an erroneous decision results from a failure to apply the correct constitutional
     standard.  *See e.g.  Herrera v. LeMaster*, 225 F.3d 1176 (10ᵗʰ Cir. 2000).  The Seventh

27   Circuit has applied the same rationale to an "egregious" error in the handling of a Fourth
     Amendment claim. *See Miranda v. Leibach*, 394 F.3d 984 (7ᵗʰ Cir. 2005).  Petitioner asserts

28   neither.

**Summary** - Petitioner having failed to show that the state court's analysis was erroneous (assuming that is relevant), and failing to otherwise establish the denial of a full and fair hearing, the *Stone* doctrine bars consideration of his Ground 1.  Accordingly, the claim is without merit and must be denied.

## F.  GROUND 2: RIGHT TO SILENCE

For his Ground 2, Petitioner argues that he was questioned by the police after he invoked his right to remain silent.[14]  Respondents argue that the state courts properly concluded that the disputed statements were not the result of interrogation or its functional equivalent.  (2nd Supp. Answer, #57 at 16.)

**Background** - "[A]n accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."  *Edwards v. Arizona*, 451 U.S. 477, 484-485 (1981).  However, not every encounter between police and a defendant are barred once the right to counsel is invoked.  "[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent."  *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980).  "Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Id.* at 301.  An "incriminating response" refers to "any response-whether inculpatory or exculpatory-that the prosecution may seek to introduce at trial."  *U.S. v. Padilla,* 387 F.3d 1087, 1093 (9th Cir. 2004) (citations omitted, quoting *Rhode Island v. Innis*, 446 U.S. 291 (1980)).

---

[14] As noted by Respondents, the *Stone* doctrine discussed in connection with Ground 1 does not bar Petitioner's claim in Ground 2.  (2nd Supp. Answer, #57 at 14, n. 6.)  *See Withrow v. Williams*, 507 U.S. 680, 687 (1993) ("Stone's restriction on the exercise of federal habeas jurisdiction does not extend to a state prisoner's claim that his conviction rests on statements obtained in violation of" *Miranda v. Arizona*, 384 U.S. 436 (1966).).

1      The Arizona Court of Appeals rejected Petitioner's claim, finding that there was no

2   interrogation or functional equivalent of interrogation. (Exhibit D, Mem. Dec. 4/9/92 at 7.)[15]

3      Whether a defendant was subject to interrogation is a mixed question of fact and law.

4   *U.S. v. Moreno-Flores*, 33 F.3d 1164, 1169 (9th Cir. 1994).

> [A] federal court reviewing a state court conclusion on a mixed issue
> involving questions both of fact and law must first separate the legal
> conclusions from the factual determinations that underlie it.
> Fact-finding underlying the state court's decision is accorded the full
> deference of §§ 2254(d)(2) and (e)(1), while the state court's conclusion
> as to the ultimate legal issue-or the application of federal law to the
> factual findings-is reviewed per § 2254(d)(1) in order to ascertain
> whether the decision is "contrary to, or involved an unreasonable
> application of, clearly established" Supreme Court precedent. 28 U.S.C.
> § 2254(d)(1).

*Lambert v. Blodgett*, 393 F.3d 943, 977-978 (9th Cir. 2004).

      The disputed statement introduced at trial was the following testimony by Detective

Van Meter:

> Q.   Did Mr. Hess make any comments to you concerning
> robberies that had occurred on November 17th, 1988?
> A.  Not explicitly naming any of the establishments, no.
> Q.  Did he make any comments involving robberies.
> A.  Yes.
> Q.  Can you tell me what he told you.
> A.  He asked me a question about some money that was in a red
> backpack that Detective Rose had recovered.  He asked me the question
> if he could get that money back, and I told him that it was - - it was not
> my money.  I didn't seize it.  I had no control over that money.  He told
> me - - he went on further to say that the money that was in that
> backpack he had earned, and the money that was taken in the robberies
> yesterday, he had hid that money.  He went on to tell me that he had
> had it - - it was not in any kind of bag or covering or anything like that,
> that he had hid that money in a bush.

(Exhibit WW, R.T. 8/7/89 at 29-30.)  At the suppression hearing, Detective Van Meter had

testified that this conversation occurred in jail, when he had gone to obtain additional

fingerprints from Petitioner and to advise Petitioner that he was filing additional charges

---

[15]   A federal habeas court reviews the "last reasoned decision" by a state court.
*Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Here, the Arizona Supreme Court
issued a summary denial (Exhibit F) of Petitioner's Petition for Review, making the Arizona
Court of Appeals' Memorandum Decision (Exhibit D) the "last reasoned decision."

1    against Petitioner based on the robberies.[16]  (Exhibit SS, R.T. 8/2/89 at 8-12.)

2        At that time, Petitioner had already invoked his right to remain silent.  (*Id.* at 8.)

3    Petitioner argues that the police effectively wore him down by repeated contacts after he

4    invoked his right to counsel,[17] including questioning him about a California fugitive warrant,

5    consents to search his home and truck, the events of the high-speed pursuit, and the event that

6    led to the disputed statements.  Thus, when Petitioner eventually spoke about his having

7    hidden the funds from the robberies, it was as a result of the functional equivalent of

8    interrogation.  (2nd Supp. Reply, #69 at 7-8.)

9         The Arizona Court of Appeals summarized the underlying facts as follows:

10             A detective testified that he later went to the jail to have
                appellant fingerprinted and to advise him of additional charges that
11             were being filed.  Appellant initiated a conversation in which he told
                the detective that he had hidden the money from the robberies under a
12             bush after the chase.

13    (Exhibit D, Mem. Dec. at 2.)  Petitioner offers nothing to show that these findings were in

14    error.

15        To sustain a challenge based on the state record, a habeas petitioner must show that,

16    in finding the absence of a functional equivalent of interrogation, the state court made an

17    "unreasonable determination of the facts in light of the evidence presented in the State court

18    proceeding."[18]  28 U.S.C. § 2254(d)(2).  To find that burden met, this Court "must be

19    _____

20         [16] The conversation proceeded with a discussion about the location and amount of the
      money.  (Exhibit SS, R.T. 8/2/89 at 17-18.) These subsequent statements were not introduced
21    at trial.

22         [17]  Respondents note that Petitioner references his invocation of his right to counsel,
23    advise that they consider this to be part of his right to silence claim, and not a separate right
      to counsel claim, which they assert would be unexhausted and procedurally defaulted.  (2nd
24    Supp. Answer, #57 at 17.)  Petitioner does not, in his Second Supplemental Reply, take
      exception to Respondents characterization of these arguments.  Accordingly, the undersigned
25    adopts Respondents characterization of those arguments, and does not reach the procedural
26    default issues.

27         [18]  To the extent that Petitioner might now be attempting to introduce new evidence,
      the standard is even more stringent:
28         State-court fact-finding may be overturned based on new evidence presented

1    convinced that an appellate panel, applying the normal standards of appellate review, could

2    not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox,* 366

3    F.3d 992, 1000 (9th Cir. 2004).  Here, the undersigned is unconvinced that the burden is met.

4         It is true that the Arizona Court of Appeals does not reference all of the prior contacts

5    now cited by Petitioner.  Petitioner argued in his Supplemental Brief (Exhibit C) about the

6    contacts concerning: the consents to search (*id.* at 5-6), the fugitive warrant (*id.* at 7), and the

7    high-speed chase (*id.* at 8).  "Failure to consider key aspects of the record is a defect in the

8    fact-finding process." *Taylor v. Maddox,* 366 F.3d 992, 1008 (9th Cir. 2004).  However, the

9    state court need not delineate every factual consideration.  "We adhere to the proposition that

10   a state court need not make detailed findings addressing all the evidence before it."

11   *Miller-El v. Cockrell,* 537 U.S. 322, 347 (2003).  Nonetheless, the failure to include a

12   discussion of the relevant evidence can show that it was disregarded.  *Id.*   Thus, the Ninth

13   Circuit has concluded that "[i]n making findings" as part of a reasonable determination of

14   the facts, "a judge must acknowledge significant portions of the record, particularly where

15   they are inconsistent with the judge's findings." *Taylor*, 366 F.3d at 1007.

16        Here, the omitted facts were not so significant as to cause the undersigned to question

17   the reasonableness of the decision of the Arizona Court of Appeals.  Most of the contacts

18   between Petitioner and the officers were simply "those normally attendant to arrest and

19   custody." *Rhode Island v. Innis,* 446 U.S. at 301.   For example, the contact about the

20   fugitive warrant, the consents to search, the fingerprinting, the advice about the new charges,

21   the mental health assistance and even the response to Petitioner about the disposition of the

22   impounded funds would have been such contacts.  Even taken together, those contacts do not

23   amount to the "functional equivalent of interrogation." *Id.*

24        Perhaps Petitioner sees the contacts attendant to arrest and custody narrowly, i.e.

25   _____

26        for the first time in federal court only if such new evidence amounts to clear
         and convincing proof that the state-court finding is in error. See 28 U.S.C. §
27        2254(e)(1).
     *Taylor v. Maddox,* 366 F.3d 992, 1000 (9th Cir. 2004).

28

applying to little more than booking processes and directions around the jail.  The Courts do not. For example, "this circuit has suggested that when an officer informs a defendant of circumstances which contribute to an intelligent exercise of his judgment, this information may be considered normally attendant to arrest and custody." *United States v. Crisco*, 725 F.2d 1228, 1232 (9th Cir.) cert. denied, 466 U.S. 977 (1984).  Thus, in *Crisco* the court found that an officer's explanation of the facts underlying the charges was intended to inform the defendant of circumstances and was not a functional equivalent of interrogation.  In *U.S. v. Moreno-Flores*, an officer's post-arrest advice about the drugs seized and that the defendant was "in serious trouble" was found to be attendant to his arrest.  33 F.3d 1164, 1170 (9th Cir. 1994).

Petitioner also complains about the contact concerning the high-speed chase.  While this arguably could have been outside the realm of contacts "normally attendant to arrest and custody," that contact did not of itself result in any statements by Petitioner.  Petitioner offers nothing to show that such contact by itself would have prompted Petitioner to provide incriminating responses.  Nor does Petitioner show that Detective Van Meter was even aware of this contact such that it should have made him expect an incriminating response from Petitioner during the later fingerprinting session. (Supp. Reply, #69 at 7.)   "But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response."  *Rhode Island v. Innis,* 446 U.S. at  302.

Petitioner complains that all of these contacts should be considered together and makes much of the fact that he was distraught and had complained to Detective Van Meter of his psychological condition.  "Whether the officers knew that the suspect was peculiarly susceptible to the officers' appeal, or that he was unusually disoriented or upset is relevant to the inquiry."  *Crisco,* 725 F.2d at 1232.  Petitioner does not show, however, that all these circumstances combined amounted to the "compelling pressures of in-custody interrogation identified in Miranda as working 'to undermine the individual's will to resist and to compel

him to speak.' " *Crisco*, 725 F.2d at 1232 (quoting *Miranda*, 384 U.S. at 494).  These were not repeated jabs at Petitioner to wear him down into confessing or to take advantage of his unstable condition.  To the contrary, it seems plain to the undersigned that the police were engaged in routine, non-interrogative contacts, and Petitioner simply volunteered his incriminating statements in an effort to save the impounded funds from being labeled as proceeds of the robbery, and thus subject to return to the victims.

Accordingly, the undersigned finds that an appellate panel could reasonably conclude that the finding of no interrogation was supported by the record.  Therefore, the state court's determination of the nature of Detective Van Meter's conduct was not an "unreasonable determination of the facts."

Nor does Petitioner offer anything to show that the state court's  conclusions of law were contrary to or an unreasonable application of Supreme Court law, as required for relief under 28 U.S.C. § 2254 (d)(1).  The Arizona Court of Appeals identified the proper standard under *Rhode Island v. Innis*, and evaluated whether the statements were the product of "interrogation or its equivalent."  (Exhibit D, Mem. Dec. 4/9/92 at 7.)

Accordingly, the undersigned concludes that Ground Two is without merit and must be denied.


**G.  GROUND 5: INEFFECTIVE ASSISTANCE RE SUPPRESSING STATEMENTS**

For his Ground 5, Petitioner argues that he received ineffective assistance of counsel because counsel failed to move to suppress the statements he made to Detective Van Meter about the funds in his backpack, on the basis that they were the fruit of the illegal search of the backpack. Respondents argue that the search of the back pack may have been the "but for" cause of the statements, but the statements were volunteered by Petitioner and therefore were not the "product" or "fruit" of the backpack search, or if the "product" the connection was too attenuated.  Therefore, Respondents argue, counsel was not deficient for failing to raise the challenge, and there was no prejudice because any such effort would have failed.  Finally, Respondents argue that there was no prejudice because the evidence was so

1    overwhelming that exclusion of the statement would not have resulted in a different outcome

2    to the trial.

3         Petitioner replies that trial counsel's motion to suppress his statements was

4    inadequate, resulting in the waiver of the claim when presented to the Arizona Court of

5    Appeals, and reiterates that "[h]ad police not illegally seized Hess's backpack on the 18[th],

6    there would have been no money in their possession for Hess to make statements about and

7    the incriminating statement could not have been legally obtained any other way."  (2[nd]

8    Supplemental Reply, #69 at 10-11.)  Petitioner argues that the connection between the

9    backpack and the statements was not too attenuated, and that prejudice has been shown.

10   Finally, Petitioner argues that he was improperly precluded from developing a record on the

11   issue in the state courts.

12        **Standard for Ineffective Assistance Claims** - Generally, claims of ineffective

13   assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668

14   (1984).  In order to prevail on such a claim, petitioner must show:  (1) deficient performance

15   - counsel's representation fell below the objective standard for reasonableness; and (2)

16   prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the

17   result of the proceeding would have been different. *Id.* at  687-88.  Although the petitioner

18   must prove both elements, a court may reject his claim upon finding either that counsel's

19   performance was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

20        The court hearing an ineffective assistance of counsel claim must consider the totality

21   of the evidence with an eye toward the ultimate issue of whether counsel's conduct so

22   undermined the functioning of the adversarial process that the proceeding lacked

23   fundamental fairness. *Id.* at 686; *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)(observing

24   that counsel cannot be labeled ineffective for failing to raise issues which have no merit);

25   *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir.1985) (failing to raise meritless argument on

26   appeal does not constitute ineffective assistance of counsel).

27        A deficient performance is one in which counsel's errors were so great he or she was

28   not functioning as the counsel guaranteed by the Sixth Amendment. *Iaea v. Sunn*, 800 F.2d

1   861, 864 (9th Cir. 1986).  An objective standard applies to proving such ineffectiveness, and

2   requires a petitioner to demonstrate that counsel's actions were "outside the wide range of

3   professionally competent."   *United States v. Houtcens*, 926 F.2d 824, 828 (9th   Cir.

4   1991)(quoting *Strickland*, 466 U.S. at 687-90).   The reasonableness of counsel's actions is

5   judged from counsel's perspective at the time of the alleged error in light of all the

6   circumstances.  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

7        **Validity of Underlying Claim** - Petitioner raised this ineffective assistance claim in

8   his first PCR petition.  (Exhibit I at 9-13.)  In disposing of the claim, the trial court noted the

9   Arizona Court of Appeals' determination that the search and seizure of the backpack and its

10  contents was unconstitutional.  However, the trial court found that "[t]he defendant's very

11  incriminating statements as to the proceeds of the robberies were not the fruits of the illegal

12  backpack search or obtained in violation of *Miranda* but were volunteered by the defendant."

13  (Exhibit L, M.E. 7/15/97 at 2.)   Petitioner repeated the claim in his petitions for review.

14  (Exhibit M at 6; Exhibit P at 7.)  The Arizona Court of Appeals and Arizona Supreme Court

15  summarily denied the claims.[19]  (Exhibits O & R.)

16       The Supreme Court has long held that "evidence seized during an unlawful search

17  could not constitute proof against the victim of the search.  The exclusionary prohibition

18  extends as well to the indirect as the direct products of such invasions."  *Wong Sun v. U.S.*,

19  371 U.S. 471, 484-485 1963).  Thus, evidence may be subject to suppression if it is the

20  "fruit" of an illegal search or seizure.  For evidence to be considered the "fruit" of an illegal

21  search, "the illegality [must be] at least the 'but for' cause of the discovery of the evidence."

22  *Segura v. U.S.,* 468 U.S. 796, 815 (1984).  However, "[t]he Court has never held that

23  evidence is 'fruit of the poisonous tree' simply because 'it would not have come to light but

24  for the illegal actions of the police.'"  *Id.*  Thus the "but for" relationship is a necessary but

25  not sufficient condition for evidence to be the "fruit of the poisonous tree."

26  ───────────────────

27        [19] The trial courts decision on Petitioner's first PCR proceeding is the "last reasoned
    decision" and thus the one reviewed here.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th

28  Cir. 2004).

1    Rather, the nexus between the illegality and the evidence must be such that the

2    "primary taint of the unlawful invasion" is not purged by intervening circumstances. *Kaupp*

3    *v. Texas*, 538 U.S. 626, 633 (2003).  Thus, where a confession would not have occurred "but

4    for" illegal conduct, it may still be admitted if "that confession was 'an act of free will

5    [sufficient] to purge the primary taint of the unlawful invasion.' " *Id.* quoting *Wong Sun,* 371

6    U.S. at  486.

> Demonstrating such purgation is, of course, a function of circumstantial evidence, with the burden of persuasion on the State. Relevant considerations include observance of *Miranda*, "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct."

*Kaupp*, 538 U.S. at 632-633 (citations omitted, quoting *Brown v. Illinois*, 422 U.S. 590, 603-

604 (1975)).

    Here, all the factors point to the purging of the taint. Petitioner had been provided

*Miranda* warnings.  Moreover, there were significant intervening circumstances between the

illegal search and the statements.  The illegal search of the backpack was conducted on

November 18, 1988, the date of Petitioner's arrest, by Detective Roland Rose of the Phoenix

Police Department.  (Exhibit RR, R.T. 8/1/89 at 37-40.)  It was Detective Rose who then

advised Petitioner that the backpack and bank funds had been seized. *(Id.* at 42.) In contrast,

Petitioner's incriminating statements were made to Detective Van Meter of the Scottsdale

Police Department on the following day, November 19, 1988.  (Exhibit SS, R.T. 8/2/89 at

8-9.)  There had been an intervening discussion between Petitioner and Van Meter, on

November 18th, concerning the search of Petitioner's truck and home.  (*Id.* at 6-8.)  Thus,

Petitioner's statements were not a spontaneous reaction to the illegal search and seizure.

Rather, they were born of substantial delay and opportunity for consideration by Petitioner.

    Petitioner complains that a mere "24-hours between the illegal search and Hess's

statement does not constitute sufficient temporal attenuation to purge the taint."  (2nd Supp.

Reply, #69 at 14.)  To support this contention, Petitioner references *U.S. v. Ceccolini*, 435

U.S. 268 (1978).  However, *Ceccolini* does not establish some minimum time or bright line

1   rule, but reiterated that "no mathematical weight can be assigned to any of the factors which

2   we have discussed."   *Id.* at 280.

3          Further, although ultimately determined improper, it cannot be said that the search of

4   Petitioner's backpack was flagrant misconduct. The issue was close enough that the trial

5   judge believed that the search was proper.  Petitioner argues that the whole course of police

6   contact was flagrant.  (2nd Supp. Reply, #69 at 13-14.)  However, it is only the flagrancy of

7   the violation in searching the backpack that is pertinent to deciding whether the results of that

8   search should have been excluded. "A criminal prosecution is more than a game in which the

9   Government may be checkmated and the game lost merely because its officers have not

10  played according to rule." *Ceccolini*, 435 U.S. at 279 (quoting *McGuire v. United States*, 273

11  U.S. 95, 99 (1927)).

12         Thus, the Arizona trial court properly determined that the incriminating statements

13  "were not the fruits of the illegal backpack search."   As a result, any attempt by trial counsel

14  to pursue a motion to suppress on this basis would have been futile, and cannot form the

15  basis of an ineffective assistance claim.[20]

16         Therefore, Petitioner's Ground 5 is without merit and should be denied.

17

18  **H.  GROUND 6: INEFFECTIVE ASSISTANCE RE CONSENT TO SEARCH**

19         For Ground 6 of his Petition, Petitioner argues he received ineffective assistance of

20  trial and appellate counsel because they failed to raise the issue of an unlawful consent search

21  after Petitioner had invoked his right to counsel.  Respondents argue that Petitioner has failed

22  to show ineffective assistance because a consent to search is not an interrogation prohibited

23  by the Fifth Amendment; the disputed search yielded no incriminating evidence, the only

24  evidence being photos which were available from evidence in plain view; and appellate

25  counsel could have reasonably declined to argue the issue under the applicable "fundamental

26  _____

27         [20]  Because the undersigned finds that the omissions complained of would have been
    futile, the claims of lack of prejudice are not addressed. *See Strickland*, 466 U.S. at 697
28  (court need not address both defective performance and prejudice to dispose of claim).

- 52 -

1    error" review standard.

2          Petitioner replies that at the time, controlling state law held a request to consent to

3    search to be a violation of the right to counsel, and that law controls whether the request

4    would have been futile.  Petitioner argues that the search yielded photos of the truck which

5    were admitted and were incriminating.

6          Petitioner raised this claim in his first PCR petition.  (Exhibit I.)  The Arizona trial

7    court denied that petition, but did not explicitly address the issue of the consent to search of

8    the evidence from the search of Petitioner's truck, but simply noted that "[t]he admission of

9    the physical evidence at trial was considered on appeal and, except for he backpack, was

10   affirmed."[21]  (Exhibit L, M.E. 7/15/97 at 2.)

11   **Viability of Underlying Suppression Claim** - Petitioner argues that counsel could

12   have argued for invalidation of the consent to search based on state law.[22]  In *State v. King*,

13   the Arizona Court of Appeals held that "after invocation of the right to an attorney, a search

14   cannot be based upon consent obtained after such invocation absent attenuating

15   circumstances."  140 Ariz. 602, 604, 684 P.2d 174, 176 (Ariz.App.,1984).  Respondents

16   counter that the federal courts have consistently held that a consent to search is not an

17   incriminating statement, and therefore a request for such a consent is not an interrogation that

18   triggers a previously invoked right to counsel.  (2nd Supp. Ans., #57 at 24.)  However, as

19   _____

20        [21] Contrary to the trial court's conclusion, the issue of the consent to search the truck
     and the resulting evidence was neither raised by Petitioner nor decided in Petitioner's direct
21   appeal. (*See* Exhibits B (Open. Br.), C (Supp. Br.), and D (Mem. Dec.).)

22        [22] Petitioner also cites *State v. Britain,,* 156 Ariz. 384, 752 P.2d 37 (Ariz.App. 1988).
     *Britain* involved a statement uttered after the defendant had been repeatedly hit over the head
23   with flashlight.  The holding was narrow:

24          We hold that a statement made in response to a police beating is involuntary
            as a matter of law. When a statement is a response to police brutality, debate
25          will not be allowed as to whether the brutality was intended to elicit a
            statement or as to whether defendant's will was truly overborne. When
26          impermissible police conduct of this sort causes a statement, a finding of
            involuntariness is mandated.
27   *Britain,* 156 Ariz. at 385, 752 P.2d at 38. Petitioner does not allege any police beating or
28   brutality.

1   noted by Petitioner, it is not only federal law which sets the bar for the performance of

2   constitutionally effective counsel.[23]

3          Based on *King*, the undersigned concludes that a motion to suppress any evidence

4   resulting from the search of the vehicle would have been successful.

5          **Results of Search** - Here, however, there was no evidence introduced at trial which

6   resulted from the search.  Detective Van Meter testified that there was "[n]othing of

7   evidentiary items" found in the truck.  (Exhibit WW, R.T. 8/27/89 at 38.)  And, Petitioner

8   argues only that the photos of the truck should have been excluded.

9          However, the photos of the truck did not result from the improperly obtained consent.

10  The truck was parked on the street.  The photographing of the vehicle was not a "search."

11  Without implicating the law of searches and seizures, "the police may record what they

12  normally may view with the naked eye."  *U.S. v. Gonzalez,* 328 F.3d 543, 548 (9th Cir. 2003)

13  (no violation of reasonable expectation of privacy by video recording of public mailroom in

14  community hospital). "The exterior of a car, of course, is thrust into the public eye, and thus

15  to examine it does not constitute a 'search.' " *New York v. Class,* 475 U.S. 106, 114 (1986).

16         Accordingly, even had counsel successfully challenged the validity of the consent to

17  search, that would not have precluded the admission of the photos of the exterior of the

18  vehicle.  There would, therefore, have been no point to challenging the validity of the

19  consent, and failure to raise the claim cannot be deemed to be ineffective assistance.

20         Accordingly, Petitioner's Ground 6 is without merit and should be denied

21

22  **I.  GROUND 7: INEFFECTIVE ASSISTANCE RE SEIZURE**

23         For Ground 7 of his Petition, Petitioner argues that he received ineffective assistance

24  of trial and appellate counsel because they failed to raise the issue of the unlawful seizure of

25  Petitioner's backpack, bank bag, and notebook with the car.

26         [23]  If Petitioner asserted this claim as a freestanding ground for relief, rather than as

27  a basis for a claim of ineffective assistance, then this Court would be limited to evaluating
    it under federal law.  *See Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994) (habeas

28  available only for federal law violations, and state courts final arbiters of state law).

- 54 -

Respondents argue that Petitioner has failed to show ineffective assistance because Petitioner did not have standing to challenge the transportation of the third party's vehicle to the impound lot, and it was the search of the backpack in the vehicle which produced incriminating evidence.

Petitioner replies that (1) he isn't challenging the seizure of the car, but the seizure of the property inside which the police knew to be his; (2) the evidence infers that the officer who drove the car to the lot removed the notepad from his backpack[24]; (3) trial counsel failed to develop this theory by calling the relevant officers and appellate counsel failed to argue the issue on direct appeal.

Petitioner raised this claim in his first PCR Petition. (Exhibit I at 16.)  The trial court did not expressly address the issue, but denied the claim.  (Exhibit L, M.E. 71/5/97.)

On direct appeal, the backpack and its contents were deemed by the Arizona Court of Appeals to have been wrongly admitted, but harmless.  Accordingly, the only remaining evidence introduced at trial as a result of the seizure of Petitioner's property was his notepad.

**Legality of "Seizure"** - Petitioner proffers no authority for the proposition that his property was illegally seized.[25]  He likens its seizure to an attempt by police to seize everything in his home.  (2ⁿᵈ Supp. Reply, #59 at 24.)  The comparison fails because Petitioner's property was not securely at his residence, but in another's car at a laundromat. The police generally have the authority to impound a vehicle following an arrest of its driver, as part of their "care-taking" functions, whether to avoid safety concerns, to insure the safety of the vehicle, or simply to keep it from being abandoned on another's property.  "Case law supports the view that where a driver is arrested and there is no one immediately on hand to take possession, the officials have a legitimate non-investigatory reason for impounding the

---

[24]  This argument is considered and rejected *infra* in connection with Ground 8 (ineffective assistance re plain view).

[25]  The undersigned presumes without deciding that the transfer of the property in the car was a "seizure" within the meaning of the Fourth Amendment.  *See e.g. South Dakota v. Opperman,* 428 U.S. 364, 371, n.6 (1976) (noting the debate whether an impound inventory qualifies as a Fourth Amendment "search").

1  car."[26]  *Vega-Encarnacion v. Babilonia,* 344 F.3d 37, 41 (1st Cir. 2003).  *See also Hallstrom*

2  *v. City of Garden City*, 991 F.2d 1473 (9th Cir. 1993) (vehicle of arrestee properly impounded

3  from private parking lot to avoid vandalism).

4      By the same token, Petitioner's property in the vehicle was subject to being taken into

5  protective custody.  *See U.S. v. Mitchell*, 458 F.2d 960 (9th Cir. 1972) (care-taking function

6  applied to personal property within impounded vehicle).   Doubtless, neither Petitioner nor

7  any other arrestee would have wanted the police to have removed the property and simply

8  deposited it on the street.  If they delivered it to Petitioner, they would have been able to

9  impound it as a consequence of his arrest. *See U.S. v. Edwards,* 415 U.S. 800, 804 (1974)

10  ("clothing or other belongings may be seized upon arrival of the accused at the place of

11  detention").[27]

12  **Ineffective Assistance** - "Where defense counsel's failure to litigate a Fourth

13  Amendment claim competently is the principal allegation of ineffectiveness, the defendant

14  must also prove that his Fourth Amendment claim is meritorious and that there is a

15  reasonable probability that the verdict would have been different absent the excludable

16  evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison,*  477 U.S. 365,

17  375 (1986). Petitioner has failed to show that there was an illegal seizure by the transfer of

18  his personal property to the police parking lot.   Accordingly, his claim of ineffective

19  assistance of counsel related thereto is without merit and must be denied.

20  / /

21  / /

22  ───────────────────

23      [26]  Here, the evidence shows that the vehicle was driven to the police station with the

24  consent of the owner, Petitioner's girlfriend.  (*See* Pet's Exhibit O, Police Report 88-151426

25  at 3. ("She agreed to accompany a patrol officer [to the police station and to] let me drive her car to the police station.")

26      [27]  Even if there had been an illegal seizure, the available options of depositing the

27  goods on the street or delivering them to Petitioner would have resulted in the discovery of the notepad evidence. Such inevitable discovery would authorize the admission of otherwise

28  excludable evidence. *U.S. v. Reilly,* 224 F.3d 986, 994 (9th Cir. 2000).

**J.  GROUND 8: INEFFECTIVE ASSISTANCE RE PLAIN VIEW**

For Ground 8 of his Petition, Petitioner argues that he received ineffective assistance of trial and appellate counsel because they failed to raise the issue of the unlawful search and seizure of Petitioner's notepad in violation of the plain view doctrine.  Petitioner argues that: (1) there was no probable cause to believe the car in which the notepad was found contained evidence; (2) nor was there probable cause to believe that the notepad was evidence of the crime for which Petitioner was arrested; (3) the evidence suggests that the notepad was found inside the backpack and then moved to "plain view"; (4) the officer was required to pickup and read the notepad before its incriminating nature became apparent.

Respondents argue that: (1) Petitioner has failed to show ineffective assistance because the notepad was in plain view in the truck, and plainly incriminating; (2) appellate counsel did argue the plain view issue, albeit unsuccessfully, and Petitioner fails to show the argument was inadequate; and (3) Petitioner has not shown prejudice because the strong evidence from the witnesses would have resulted in conviction without the notepad.

Petitioner adds in his reply that counsel failed to inquire whether the officer had to leaf through the notepad to find the incriminating page, and case law shows that perusing through documents precludes a finding that they were in plain view.

Petitioner raised this claim in his first PCR petition (Exhibit I).  The trial court rejected the claim based upon the determination that the "writing notepad was properly seized as in plain vew."  (Exhibit L, M.E. 7/15/97 at 2.)

**Probable Cause Requirement** - "To fall within the plain view exception, two requirements must be met: the officers must be lawfully searching the area where the evidence is found and the incriminatory nature of the evidence must be immediately apparent."  *Roe v. Sherry,* 91 F.3d 1270, 1272 (9th Cir. 1996).

Petitioner also argues that probable cause was required before the police could search the car, citing *Arizona v. Hicks*, 480 U.S. 321, 326 (1987).  *Hicks* did not require probable cause as a prerequisite to the police being in a position to view the evidence.  Rather, *Hicks* held that before a search could extend beyond what was in "plain view" (e.g. inspecting

serial numbers by turning around stereo equipment, to see if they were stolen), "probable cause" was required.  Thus, *Hicks* did not add a "probable cause" requirement to the plain view doctrine, but simply recognized that the requirement for probable cause remained outside the doctrine.

That is not to say that probable cause is never relevant.  In applying the "plain view" doctrine, the Supreme Court noted "[i]t is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton v. California,* 496 U.S. 128, 136 (1990).   If it is necessary to show probable cause for the officers to be "lawfully searching the area", then it is functionally a prerequisite.

Here, however, the officers were lawfully searching the car because they had obtained the permission of the car's owner, Petitioner's girlfriend. The Arizona Court of Appeals properly reasoned: "Since the girlfriend did consent to the search of [her] car, the note pad lying on the car's floorboard was properly seized according to the 'plain view' doctrine."  (Exhibit D, Mem. Dec. at 5.)  Thus, no "probable cause" requirement applied to the entry to the vehicle. "It is ... well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973).  *See also Harris v. United States*, 390 U.S. 234 (1968) (no illegal search where notecard on floor of care became visible when officer validly opened impounded car to roll up windows and secure the car).

Nor does that say that "probable cause" is not pertinent to the analysis whether the "incriminatory nature" is "immediately apparent."  *See e.g. Payton v. New York,* 445 U.S. 573, 587 (1980) (plain view doctrine requires "probable cause to associate the property with criminal activity").  The existence of that type of "probable cause" is addressed below in the "immediately apparent" discussion.

**Nexus to Arrest Crime** - Petitioner also complains that the incriminating nature of the notepad related to the armed robberies, while he was being arrested on felony flight and

1  a California fugitive warrant.  However, there is no requirement that evidence found in plain

2  view relate to the crime originally being investigated, or leading to the arrest.  "That lack of

3  relationship always exists with regard to action validated under the 'plain view' doctrine;

4  where action is taken for the purpose justifying the entry, invocation of the doctrine is

5  superfluous." *Hicks* , 480 U.S. at 325.

6       Indeed, there is not even a requirement that officials be investigating any crime at the

7  time the evidence comes into view.  Rather, the doctrine extends to evidence discovered

8  when the officer has a "legitimate reason for being present unconnected with a search

9  directed against the accused." *Coolidge v. New Hampshire,* 403 U.S. 443, 466 (1971).  *See*

10  *e.g. Texas v. Brown*, 460 U.S. 730 (1983) (drugs seen in vehicle at routine drivers license

11  checkpoint); *Michigan v. Tyler*, 436 U.S. 499 (1978) (discussing seizure of evidence by

12  firemen responding to fire). *See also Coolidge,* 403 U.S. at 466 ("the 'plain view' doctrine

13  has been applied where a police officer is not searching for evidence against the accused, but

14  nonetheless inadvertently comes across an incriminating object").

15       **Plain View Finding** - Petitioner argues in connection with this claim, as well as in

16  connection with Ground 7, that the officer driving the car to the police parking lot must have

17  removed the notepad from his backpack and placed it on the floorboard to be in plain view.

18       The Arizona Court of Appeals found on direct appeal that the notepad was "lying next

19  to the backpack" and concluded: "Since the girlfriend did consent to the search of the car,

20  the note pad lying on the car's floorboard was properly seized according to the 'plain view'

21  doctrine." (Exhibit D, Mem. Dec. at 2, 5.)  A "plain view" determination is a mixed question

22  of fact and law.  The underlying factual determinations, e.g. that the notepad was on the

23  floorboard and was visible upon entry to the car, can only be rejected if Petitioner shows that

24  they were an unreasonable determination of the facts based upon the evidence before the

25  state courts, and those findings are entitled to a presumption of correctness and may not be

26  overcome by extrinsic evidence first presented here unless such evidence is clear and

27  convincing. *See Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (discussing limitations

28  under 28 U.S.C. § 2254 (d)(2) (unreasonable determination of facts based on record) and

1  (e)(1) (presumption of correctness against new evidence).

2      Petitioner does not affirmatively assert that the notepad was in the backpack and not

3  on the floorboard.  Indeed, in the trial court he disclaimed such knowledge.

4              Q.  Where was your notebook?
               A.  I don't know.  I don't remember it being on the floorboard.
5      I don't even remember it being there.  I thought I had left it at home, so
       it was probably wherever they said it was because I don't remember at
6      all.

7  (Exhibit RR, R.T. 8/1/89 at 52.)

8      Nonetheless, Petitioner now argues that officer Rose testified that the note pad was

9  not in plain view. (2nd Supp. Reply #69 at 5.)  At the suppression hearing, Officer Rose

10  testified:

11              Q.  Was the backpack visible from outside the car?
               A.  Yes.
12              Q.  Was the notepad visible?
               A.  It may have been.  I didn't notice it until I opened the
13      passenger door.

14  (Exhibit RR, R.T. 8/1/89 at 47.)  Thus, read in context, Officer Rose did not assert that the

15  note pad was not in plain view, but that it may or may not have been visible from outside the

16  vehicle, but was visible once the door was opened.  Without a consent to search, the

17  difference would have been critical.  However, consent to search the vehicle was given.

18  Thus, Officer Rose was entitled to open the car and search the vehicle.  Having done so, the

19  notepad was then in plain view, and its seizure authorized under the "plain view" doctrine.

20      Petitioner also argues the notepad must have been in the bank bag because officer

21  Morgenthaler denied seeing it when he conducted a security sweep of the vehicle before

22  Petitioner's girlfriend was allowed to remove her purse.  To support this argument, Petitioner

23  points to the police reports (Exhibits O and Q) of the officers involved in the arrest, who

24  reported the observation of a "bank bag and money inside a red nap-sack" but did not report

25  seeing the notepad.[28]  (Pet's Exhibit O to #69), However, the undersigned does not find it

26  _____

27      [28]  Because they do not amount to convincing evidence, the undersigned does not
    resolve whether these police reports were evidence presented to the state courts, and thus
28  whether they may properly be considered by this habeas court as extrinsic evidence.  *See*

1   persuasive that officers "check[ing] for weapons prior to ANDERSON getting her purse"

2   (*id.*) would fail to make note of the presence of a notepad.

3       Petitioner also argues that evidence of foul play is shown because these arresting

4   officers reported the backpack to be open and the bank bag and money visible, while

5   Detective Rose reported the backpack to be closed when he ultimately searched the vehicle

6   with the owner's consent.  Indeed, Detective Rose reported that the arresting officer reported

7   "a red backpack and a bank bag with a considerable amount of money in it."  (Exhibit RR,

8   R.T. 8/1/89 at 39.)  He also testified that it was inside the backpack when he went to search

9   the car:

10          Q.  Detective Rose, where was the money when you first went
        to the car?
11          A.  It was inside the bank bag.
            Q.  Was it visible from standing outside the car?
12          A.  No, I believe I had to unzip the backpack.
                        * * *
13          THE COURT:  And you had to unzip the backpack to get to the
        bank bag?
14          THE WITNESS:  That's correct, yes.
            THE COURT:  And the pad, though was not in the backpack, it
15      was on the floorboard?
            THE WITNESS:  Yes sir.

16   (Exhibit RR, R.T. 8/1/89 at 46-48.)  While that evidence might suggest that there had been

17   some disturbance of the backpack, it does not establish that the notepad must have been in

18   the back pack.[29]

19       Petitioner's inferences from this information certainly do not make the Arizona Court

20   of Appeals' findings unreasonable nor is it clear and convincing evidence that they were

21   wrong.  Moreover, even if those deferential presumptions are not applicable in the context

22

23   *Taylor v. Maddox*, *supra.*

24

25       [29] Reasonable explanations for the purported divergence on the status of the backpack
    could include a closure of the backpack by the officer before he left the car in the parking lot
    to avoid it being observed and stolen, or that the officer performing the protective sweep of
26  the car before the girlfriend retrieved her purse opened the bag to inspect for weapons.  *See
    e.g. Harris v. United States*, 390 U.S. 234 (1968) (no illegal search where notecard on floor
27  of care became visible when officer opened impounded car to roll up windows and secure
    the car).

28

1   of resolving counsel's effectiveness, the undersigned cannot say that the inferences are even

2   sufficiently convincing that trial counsel's failure to argue them was deficient performance.

3       Nor can the undersigned say that trial counsel's failure to pursue additional testimony

4   was deficient.  Petitioner cannot leave this habeas court to speculate that questioning these

5   witnesses would have strengthened those inferences.  *Grisby v. Blodgett,* 130 F.3d 365, 373

6   (9th Cir. 1997).  "[E]vidence about the testimony of a putative witness must generally be

7   presented in the form of actual testimony by the witness or on affidavit. A defendant cannot

8   simply state that the testimony would have been favorable; self-serving speculation will not

9   sustain an ineffective assistance claim."  *U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).

10  **Immediately Apparent** - Finally, Petitioner complains that counsel failed to

11  investigate and argue that the incriminating nature of the notepad was not immediately

12  apparent.  To fall under the plain view doctrine, "the incriminatory nature of the evidence

13  must be immediately apparent."  *Roe v. Sherry,* 91 F.3d 1270, 1272 (9th Cir. 1996).

14  Petitioner complains there was no evidence the incriminating page was on top, and that

15  reading the notepad was required to ascertain the incriminating nature.

16      If the incriminating page had been buried within the notepad, it would not have been

17  within the plain view doctrine.  *U.S. v. Whitten,* 706 F.2d 1000, 1013 (9th Cir. 1983) (implied

18  overruling on other grounds recognized by *U.S. v. Rodriguez-Rodriguez*, 441 F.3d 767, 771

19  (9th Cir. 2006)) ("There was nothing facially incriminating about the closed notebook from

20  which the DEA agents could reasonably have concluded that it might contain evidence of

21  crime.").  Nor does the doctrine permit officers to "minutely scrutinize" the contents of a

22  "book or similar item" found in plain view within the authorized scope of a search.  *U.S. v.*

23  *Issacs*, 708 F.2d 1365 (9th Cir. 1983) (but recognizing the propriety of a "brief perusal" of

24  the books if items validly being searched for might reasonably be located within the book).

25      Here, however, the evidence showed that the note was the top page:

26          Q.   BY MS. CHRISTENSEN: Again, Detective Rose, what if
        anything did you find in that car?

27          A.  I found a red nylon, light nylon backpack which contained
        numerous items of identification and paperwork to James Hess.  I also

28      found a note pad - - not a note - - a letter writing table, and the top page

1      contained some information concerning a truck.
                           * * *
2          Q.   And this is Exhibit 7.  Do you recognize that?
           A.   Yes, I do.  This is the note that was on the letter writing pad
3      that was on the floorboard passenger's side of the Nissan Sentra.

4    (Exhibit WW, R.T. 8/7/89 at 49-50.)  Simlarly, in *Whitten*, the plain view doctrine did extend

5    to a "yellow pad...open to the second or third page when discovered by one of the agents"

6    which revealed plans of a drug distribution operation. 706 F.2d at 1013.

7          Petitioner cites *U.S. v. Padilla,* 986 F.Supp. 163 (S.D.N.Y.,1997) for the proposition

8    that Detective Rose could not lift the notepad and read it.  There, the court noted that the

9    "officers, upon glancing at documents noticeably beyond the scope of the consent, [could

10   not] peruse them in search of incriminating evidence."  *Id.* at 170.  However, *Padilla* did not

11   involve a single document which on its face was incriminating, but a stack of documents

12   encountered during a consensual search for "guns and drugs." *Id.*  Thus, the court held only

13   that "[a]ll documents which were not immediately incriminatory on their face should not

14   have been seized," but those with incriminating evidence "in plain view on the face of those

15   documents" were admissible.  *Id.* at 170-171.  Similarly, there is no Arizona precedent for

16   such an argument.  *See State v. Warness*, 26 Ariz.App. 359, 361, 548 P.2d 853, 855 (1976)

17   (rejecting argument that "the evidence was not in plain view because the police officer

18   picked up the bottle before being able to identify the contents positively as marijuana").

19         Indeed, evidence does not loose its character as being "immediately apparent" merely

20   because it must be examined to ascertain its character.  Case law teaches that it is not the

21   depth of the "inspection" but the depth of the "search" which is relevant.  "If an article is

22   already in plain view, neither its observation nor its seizure would involve any invasion of

23   privacy." *Horton v. California,* 496 U.S. 128, 133-134 (1990).  Thus, the plain view doctrine

24   does not permit expansion of a search beyond what is otherwise authorized.  "[T]he 'plain

25   view' doctrine may not be used to extend a general exploratory search from one object to

26   another until something incriminating at last emerges." *Coolidge v. New Hampshire* , 403

27   U.S. 443, 466-467 (1971).  Thus, the officers in this case could not argue that the evidence

28   discovered in the backpack was in plain view, since they knew the backpack belonged to

1   Hess, and was thus beyond the scope of the consent given by his girlfriend.  Likewise, as in

2   *Whitten, Padilla*, and *Issacs,* they could not have properly rifled through Petitioner's notepad.

3

4       That did not, however, preclude them from picking up the notepad to search beneath

5   it. *Compare*  with *Arizona v. Hicks*, 480 U.S. 321 (1987) (incriminating nature not apparent

6   until stereo equipment moved to inspect serial numbers).

7       Nor did it preclude them from reading the notepad.  *See U.S. v. Seljan,* 547 F.3d 993,

8   1006 (9th Cir. 2008) (evidence of pedophilia from letter to young girl was in "plain view" of

9   customs agent searching envelope for evidence of violation of currency reporting

10  requirements, even though agent had to read letter to discern incriminating nature).  *See also*

11  *Crouch v. U.S.,* 454 U.S. 952, 955 (1981), White, J., dissenting to denial of certiorari ("a

12  number of Courts of Appeals have held that a plain-view seizure of certain documents is

13  permissible even though their incriminating nature is not apparent absent some reading of

14  their contents").

15      It is true that in *U.S. v. Garcia,* the Sixth Circuit asserted that "a document, even

16  though in plain view, is [not] within the plain view exception if it must be read in order for

17  its incriminating nature to be determined."  496 F.3d 495, 510 (6th Cir. 2007).  However, that

18  was based upon a search for cocaine which resulted in the discovery in a filing cabinet of a

19  variety of receipts and financial records showing a gap between the defendant's reported

20  income and expenditures.  However, there the investigators admitted to carefully reading

21  each document and that "in order to establish an association between these documents and

22  any criminal activity, they had to undertake 'further investigation.' " *Id.* at 511.  No such

23  further investigation was required for Petitioner's notepad to be incriminating.

24      *Garcia* also related to a city map with a red circle around a known drug area, which

25  was "innocuous without close inspection" including reading the street names, which would

26  have "required far more than an instant".  However, that portion of *Garcia*'s analysis hinges

27  upon Sixth Circuit law that engrafts upon to the "immediately apparent" requirement a

28  temporal limitation that the recognition of the incriminating nature be an "instantaneous

1   sensory perception."[30]  *See U.S. v. McLernon*, 746 F.2d 1098, 1125 (6th Cir. 1984).  The

2   Ninth Circuit has never adopted such a temporal requirement.  *See U.S. v. Chesher*, 678 F.2d

3   1353, 1357, n.2 (9th Cir. 1982) (noting cases approving of reading of documents as being

4   within "immediately apparent" requirement "despite something less than instantaneous

5   recognition").  *See also U.S. v. Ochs*, 595 F.2d 1247, 1257, n.8 (1st Cir. 1979) (rejecting other

6   Circuits' interpretation of the "immediately apparent" standard to require instantaneous

7   perception and to preclude perusal, noting "it seems best to stick to the exact language of the

8   Supreme Court's plurality opinion rather than to embroider on it even slightly").  Similarly,

9   the Arizona courts have not adopted an "instantaneous" requirement.  *See e.g. State v. Millan*,

10  185 Ariz. 398, 402, 916 P.2d 1114, 1118, n. 4 (Ariz.App. 1995) (listing "immediately

11  apparent" as applicable standard.  Indeed, the undersigned has found no jurisdiction other

12  than the Sixth Circuit to have utilized a "instantaneous sensory perception" requirement.

13  **Summary** - Petitioner has failed to establish a meritorious claim that the notepad was

14  not subject to the plain view doctrine.[31]  "Where defense counsel's failure to litigate a Fourth

15  Amendment claim competently is the principal allegation of ineffectiveness, the defendant

16  must also prove that his Fourth Amendment claim is meritorious." *Kimmelman v. Morrison*,

---

18  [30]   The Sixth Circuit's "instantaneous sensory perception" construct was first
19  promulgated in *McLernon*, 746 F.2d at 1124, and the only authority cited was *Texas v.
    Brown*, 460 U.S. 737(1983).  However, *Brown* did not adopt such a standard, nor even
20  articulate any contemporaneity standard for application of the "immediately apparent"
21  component of the plain view doctrine.   Rather, the Court was concerned with whether the
    officer possessed sufficient certainty that the tied-off balloon he seized would be filled with
22  narcotics.  Thus, it appears that the Sixth Circuit's rephrasing of the "immediately apparent"
    standard has simply blossomed by repetition into a more stringent limitation upon the time
23  within which the officer may process the evidence before his eyes and conclude upon its
    evidentiary value.   Arguably this approach would make the propriety of a seizure of
24  documents depend upon the speed with which an individual officer can read or think.

25  [31]  In his Second Supplemental Reply, Petitioner argues that appellate was ineffective
26  in arguing this claim because he erroneously reported that the notepad included an address
    where his truck was located, and thus "appears to incriminate Hess further."  Although
27  arising in the course of argument over the plain view doctrine, this is a separate claim of
    ineffectiveness from what was raised in Petitioner's Ground 8 of his Petition.  Accordingly,
28  the undersigned does not address it.

1    477 U.S. 365, 375 (1986).   Petitioner cannot do so.  Accordingly, this Ground 8 must be

2    denied.

3

4    **K.  GROUND 9: INEFFECTIVE ASSISTANCE RE RIGHT TO COUNSEL**

5           For Ground 9 of his Petition, Petitioner argues he received ineffective assistance of

6    trial counsel because he failed to raise the issue of Petitioner's exercise of his 5th Amendment

7    right to counsel, relying instead solely upon his Fourth Amendment right to silence.  He also

8    argues that appellate counsel was ineffective in arguing this issue because he relied upon

9    *State v. Mauro*, 149 Ariz. 24, 716 P.2d 393 (1986) which case had been overturned.

10          Respondents argue that Petitioner has failed to show ineffective assistance because:

11   (1) counsel did argue at the voluntariness hearing that Petitioner invoked his right to counsel;

12   (2) Petitioner fails to show that he was prejudiced by appellate counsel's citation of an

13   overturned case, because counsel cited the controlling law and made the correct legal

14   argument; and (3) Petitioner cannot show prejudice from the failure to suppress given the

15   other evidence of Petitioner's guilt.

16          Petitioner replies that: (1) trial counsel failed to adequately distinguish his right to

17   counsel claim from his right to silence claim; (2) trial counsel failed to call the necessary

18   witnesses to support this claim; (3) that the evidence shows interrogation and its functional

19   equivalent; and (4) the prejudice question is debatable.

20          Petitioner asserted this claim in his first PCR proceeding.  (Exhibit I, PCR Pet. at 30,

21   *et seq.*)  The trial court rejected the claim based upon the Court of Appeals determination on

22   direct appeal[32] that the statements were not "obtained in violation of *Miranda* but were

23   volunteered by the defendant."  (Exhibit L, M.E. 7/15/98 at 2.)

24          **Trial Counsel Argued the Right to Counsel** - Petitioner argues that trial counsel

25   _____

26          [32]  As discussed in connection with Ground 2, appellate counsel argued on direct
     appeal that Petitioner's statements were a violation of his right to counsel.  (Exhibit B,
27   Opening Brief at 12, *et seq.*)  The Arizona Court of Appeals affirmed the trial court's
     conclusion that Petitioner's statements to Detective Van Meter were "not the product of
28   interrogation or its equivalent."  (Exhibit D, Mem. Dec. at 7.)

failed to assert the violation of Petitioner's right to counsel.  However, trial counsel argued to the trial court that Petitioner had invoked "his right to remain silent and have counsel present" and that as a result there was to be no "initiation prior to counsel being appointed." (Exhibit TT, R.T. 8/3/89 at 26), and characterized as "just highly unbelievable" the assertion that the encounters between Petitioner and Van Meter "is not an interrogation or a circumstance where the police were attempting to elicit responses." In support of his argument, trial counsel cited not only *Edwards*, but also *Arizona v. Roberson*, 486 U.S. 675 (1988), which extended *Edwards* to questioning on a separate investigation.  (Exhibit TT, R.T. 8/3/89 at 25-26.)  Both of these cases deal with the right to counsel as established in *Miranda*.  Accordingly, this portion of Petitioner's argument is without merit.

**Trial Counsel's Development of Facts** - Petitioner argues that counsel failed to adequately develop the evidence that his encounter with Detective Van Meter was the functional equivalent of interrogation when viewed in light of the other circumstances and contacts with police.  However, in support of this argument Petitioner simply reiterates his arguments from Ground 2.  For the reasons discussed herein above, the undersigned has rejected Petitioner's claim that in light of those other circumstances there was the functional equivalent of interrogation.

**Reference to Overturned Decision** - In the Opening Brief on direct appeal, filed in April, 1990, appellate counsel cited *State v. Mauro*, 149 Ariz. 24, 716 P.2d 393 (1986) for the proposition that the intent of the police officers determined whether conduct was the functional equivalent of questioning.  (Exhibit B, Opening Brief at 15-16.)  However, this case had been overturned several years earlier in *Arizona v. Mauro*, where the Supreme Court held that "Officers do not interrogate a suspect simply by hoping that he will incriminate himself."  481 U.S. 520, 529 (1987).

Petitioner fails to show how the citation of *State v. Mauro* prejudiced him.  The case was favorable to Petitioner, so if the Arizona Court would have relied on it, it would have been beneficial.  Presumably appellate counsel could have inspired the ire of the Arizona court by citing the overturned decision, but Petitioner points to no evidence of such.  Rather,

the Arizona Court of Appeals resolved the issue on its merits (based on the lack of interrogation), and as discussed in connection with Ground 2, did so properly.  Accordingly, this argument has no merit.

**Summary** - Trial counsel adequately argued the substance of Petitioner's right to counsel claim, and Petitioner has failed to show that any additional evidentiary support would have changed the finding that there was no violation.  Petitioner has failed to show that appellate counsel's dependence upon an overturned case prejudiced him.  Accordingly, this Ground 9 is without merit and must be denied.

**L. GROUND 10: INEFFECTIVE ASSISTANCE RE SUFFICIENCY OF EVIDENCE**

For Ground 10 of his Petition, Petitioner argues he received ineffective assistance of appellate counsel because counsel did not properly argue the evidence when asserting the insufficiency of the evidence of a weapon.

Respondents answer that: (1) counsel did argue the point; and (2) viewed in a light favorable to the prosecution, there was sufficient evidence on the point.

Petitioner replies that the evidence was insufficient to show that he had a weapon in his possession, because the witness who testified to seeing a gun thrown out of a truck window provided a vehicle and driver description that did not match Petitioner. Petitioner complains that Respondents improperly select portions of testimony to discredit to support the conviction.

**Decisions of Arizona Courts** - Appellate counsel raised an insufficient evidence claim on direct appeal, arguing that the victim in Count I (Rainbow Beauty Supply) never saw a gun, either actual or simulated.  (Exhibit C, Supp. Brief at 3.)  The Arizona Court of Appeals rejected the claim, citing *State v. Garza Rodriguez*, 164 Ariz. 107, 111, 791 P.2d 633, 637 (1990) for the proposition that "'the weapon, therefore, need not be displayed by the accused nor seen by the victim.'" The court went on to note that "another witness testified that the appellant threw a toy gun out of his truck window while fleeing the scend of the robbery."  (Exhibit D, Mem. Dec. at 8.)

1    In his first PCR petition, Petitioner asserted that appellate counsel was ineffective for

2  failing to challenge the conclusion that the person the witness saw was Petitioner.  (Exhibit

3  I, PCR Pet. at 55 *et seq.*)  The trial court did not address the substance of this claim in

4  dismissing the petition.  (Exhibit L, M.E. 7/15/97.)

5    **Law Applicable to Weapon** - Under the Arizona armed robbery statute, there are

6  three factors relevant to showing the use of a weapon.     First, there must be a weapon

7  actually present during the robbery, although it "need not be displayed by the accused nor

8  seen by the victim."  *State v. Garza Rodriguez*, 164 Ariz. 107, 111, 791 P.2d 633, 637

9  (1990).  Second, the weapon may be either real or "simulated."  "[T]he 'simulation' is not

10  that a robber feigns or pretends to have a weapon on their person but rather that the person

11  commits the robbery with a pretend deadly weapon."  *Id.* at 112, 791 P.2d at 638. "A person

12  charged with armed robbery, therefore, can no longer overcome the presumption in favor of

13  the State with proof that the article involved in the robbery was unloaded, unworkable, or a

14  fake."  *Id.* at 111, 791 P.2d at 637.   Third, the defendant must threaten to use the weapon,

15  real or simulated.  *Id.*

16    **Sufficiency of Evidence at Trial** - To sustain a claim of insufficient evidence,

17  Petitioner would have had to show that when "examin[ing] the evidence in the light most

18  favorable to upholding the conviction and resolve all reasonable inferences against a

19  defendant . . .[no] rational trier-of-fact could have found the essential elements of the crime

20  beyond a reasonable doubt."  *State v. Davila,* 189 Ariz. 44, 45, 938 P.2d 93, 94 (App. 1997)

21  (citations omitted).

22    At trial, the victim in Count I, Valerie Purnell, testified that although she never saw

23  a gun, Defendant claimed to have a gun and demanded she give him money from the register

24  drawer.  (Exhibit VV, R.T. 8/4/89 at 54, 66, 71.)

25    Thus, the only witness testifying to Petitioner's possession of a weapon, real or

26  simulated (in this instance a toy gun), was Tony DeLeano.  Deleano testified that on

27  November 17, 1988 at 4:00 in the afternoon, he witnessed police chasing a truck in the

28  neighborhood of Union Hills and 19th Avenue. (Exhibit WW, R.T. 8/7/89.) He testified that

1   he saw the driver throw something from the truck window, which landed in the  street.

2   DeLeano then retrieved the object, discovered it to be a toy gun, followed a police officer in

3   the area, and delivered it to him.  (*Id.* at 11-15.)  DeLeano did not identify Petitioner as the

4   driver of the truck, and described the driver as "dark haired, light complexion, had a - - had

5   a mustache, was wearing a dark jacket, medium brown" which he described as "a

6   windbreaker-type jacket."  (*Id.* at  10, 18.)  DeLeano described the truck as a foreign import

7   truck, Toyota or Datsun, with a crew-cab and deep brown in color.  (*Id.* at 9.)

8          Standing alone, DeLeano's testimony would at least arguably be insufficient to

9   establish Petitioner's possession of the toy gun.  DeLeano could not identify Petitioner as the

10  driver.  Moreover, Petitioner argues that DeLeano's descriptions ran counter to the testimony

11  of the witnesses from the armed robbery that Petitioner's truck was blue, and that Petitioner

12  was bare chested, had a dark complexion, and no mustache.  (Exhibit WW, R.T. 8/7/89 at 6.)

13         However, the officer to whom DeLeano delivered the toy gun testified that DeLeano

14  had described the truck to him as blue.  The officer described DeLeano's trial testimony as

15  "mistaken."  (Exhibit WW, R.T. 8/7/89 at 24, 27.)  Further, the officers involved in the high

16  speed chase at the same date, time and location as the chase described by DeLeano, identified

17  the truck they were chasing as dark blue (Exhibit WW, R.T. 8/7/89 at 21) or blue (*id.* at 52).

18  Moreover, one of the officers testified that he got a clear look at the driver of the truck, and

19  identified Petitioner as the driver.  (*Id.* at 69.)   Additionally, the license plate of the truck

20  involved in the chase was registered to Petitioner.  (*Id.* at 40-41.)

21         Contrary to Petitioner's suggestions, all the evidence to support an element of an

22  offense need not come from a single witness. When DeLeano's testimony is considered with

23  this other testimony, there was ample evidence for the jury to link Petitioner to the toy gun.

24          Moreover, the fact that DeLeano's descriptions varied from the other descriptions

25  does not defeat his connection of Petitioner to the weapon. The testimony of a witness does

26  not have to be accepted or rejected as a whole. Rather, juries are entitled to credit or discredit

27  the portions of a witness' testimony as they determine them to be credible. *See State v.*

28  *Clemons,* 110 Ariz. 555, 557, 521 P.2d 987, 989 (1974) ("The jury had the right to disbelieve

the whole of appellant's testimony or believe in part and disbelieve in part."). *See also* Model Crim. Jury Instr. 9th Cir. 1.8 (2003) ("You may believe everything a witness says, or part of it, or none of it.").

Thus, when considering the testimony of DeLeano in light of the other witnesses' testimony, a reasonable juror could have found the element of possession of a simulated weapon.

**Summary** - Based on the foregoing, the undersigned concludes that the argument proposed by Petitioner would have been futile, and thus it was not defective performance for appellate counsel to have failed to pursue it.

## M.  GROUND 13: RIGHT TO JURY AT SENTENCING

For his Ground 13, Petitioner argues that the trial court improperly enhanced his sentence based on facts not found by the jury, thus denying Petitioner his right to trial by jury.  Petitioner asserts this claim was exhausted in his 4th PCR proceeding. (Petition, #1 at 8-20.)  Respondents have not addressed the merits of this claim.

This claim was presented by Petitioner in his Fourth PCR petition (Exhibit II).  In that proceeding, he asserted the claim as a change in the law pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004).  The trial court rejected this claim based on the fact that *Blakely* was not retroactively applicable to Petitioner's conviction on collateral review.  Now, Petitioner asserts that this claim is supported by *In re Winship*, 397 U.S. 358 (1970), which would be applicable to his conviction.[33]  (#9 at 21.)

***Apprendi/Blakely* Not Retroactively Applicable** - If Petitioner's claim is dependent upon *Blakely*, or its predecessor, *Apprendi v. New Jersey*, 530 U.S. 466 (2000),  it is without

_____

[33]  Petitioner based his Fourth PCR Petition upon a change in the law wrought by *Blakely*. His current claim under the 1970 decision in  *Winship* would not have been based on such a change, and arguably would have been precluded and/or time barred.  The undersigned presumes, without deciding, that Petitioner's current claim under *Winship* was fairly presented by presenting his claim under *Blakely*.  Although Respondents argue the claim was procedurally barred, they do not argue that it was not fairly presented and thus unexhausted and procedurally defaulted.

- 71 -

1    merit because these cases are not retroactively applicable to Petitioner.

2    "Unless they fall within an exception to the general rule, new constitutional rules of

3    criminal procedure will not be applicable to those cases which have become final before the

4    new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality). The courts

5    have concluded that both the *Apprendi* and *Blakely* decisions establish new constitutional

6    rules of criminal procedure that do not fit within any of the exceptions to *Teague*. *See U.S.*

7    *v. Sanchez-Cervantes*, 282 F.3d 664 (9th Cir. 2002) (*Apprendi*); and *Schardt v. Payne*, 414

8    F.3d 1025 (9th Cir.2005).   Thus, they may not be retroactively applied.

9    *Apprendi* was decided June 26, 2000, and  *Blakely* was decided June 24, 2004.  Both

10   were decided after petitioner's conviction became "final."   In *Beard v. Banks*, the Court

11   repeated the general rule:

12   > ***Ordinarily***, ascertaining the date on which a defendant's conviction
13   > becomes final poses no difficulties: **State convictions are final** "for
     > purposes of retroactivity analysis **when the availability of direct**
14   > **appeal to the state courts has been exhausted** and the time for filing
     > a petition for a writ of certiorari has elapsed or a timely filed petition
15   > has been finally denied."

16   542 U.S. 406,  411 (2004) (quoting *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994)) (emphasis

17   added).  Here, Petitioner's conviction became final on June 1, 2000, upon the expiration of

18   his 90 day period to file a petition for a writ of certiorari following the March 3, 2000

     conclusion of Petitioner's direct appeal.  (Exhibit X.)

19   **Pre-*Apprendi/Blakely* Law** - In *Apprendi*, the Supreme Court held that, with the

20   exception of prior convictions, any fact which increases the maximum possible punishment

21   must be determined by the jury and not a judge.  In *Blakely*, the Court clarified that the

22   relevant maximum punishment was not the ultimate maximum for a give category of offense,

23   but the maximum that which could be imposed based solely upon the facts found by the jury.

24   In contrast, in  *Winship* the Court simply found "that the Due Process Clause protects the

25   accused against conviction except upon proof beyond a reasonable doubt of every fact

26   necessary to constitute the crime with which he is charged."  397 U.S. at 364.

27   Just prior to *Apprendi*, the Supreme Court had noted that it had not resolved yet

28

whether to extend that burden of proof and the related jury right to sentencing factors used to enhance a sentence. In *Jones v. U.S.*, the Court noted: "The point is simply that diminishment of the jury's significance by removing control over facts determining a statutory sentencing range would resonate with the claims of earlier controversies, to raise a genuine Sixth Amendment issue not yet settled." 526 U.S. 227, 248 (1999). Thus, without the new rules announced in *Apprendi* and *Blakely*, the principles from *Winship* would not have precluded the trial court from enhancing Petitioner's sentence based upon judicially determined facts.

**Summary** - Petitioner is not entitled to retroactive application of *Apprendi* and/or *Blakely*, and without them his Ground 13 is without merit, and must be denied.

## N. SUMMARY

Grounds 3, 4, and 12 of the Petition are procedurally defaulted, Ground 11 is procedurally barred, and all four such grounds must be dismissed with prejudice. Grounds 1, 2, 5, 6, 7, 8, 9, 10, and 13 of the Petition are without merit, and must be denied.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds 3, 4, 11 and 12 of Petitioner's Petition for Writ of Habeas Corpus, filed June 28, 2006 (#1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed June 28, 2006 (#1 be **DENIED**.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

1   have ten (10) days from the date of service of a copy of this recommendation within which

2   to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing

3   Section 2254 Proceedings.  Thereafter, the parties have ten (10) days within which to file a

4   response to the objections.  Failure to timely file objections to any factual or legal

5   determinations of the Magistrate Judge will be considered a waiver of a party's right to *de*

6   *novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

7   Cir. 2003)(*en banc*).

8

9   DATED: May 12, 2009                              _____

10                                                                JAY R. IRWIN
                                                         United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28